BOARD OF EDUCATION OF DANVILLE COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 118, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—88—0197

Opinion filed October 6, 1988.

Stanley B. Eisenhammer, of Gottlieb & Schwartz, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Gregory J. Malovance and Gregory M. Garger, both of Winston & Strawn, of Chicago, for respondent Danville Education Association.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Petitioner Board of Education of Danville Community Consolidated School District No. 118 (District) has taken administrative re-

view to this court (Ill. Rev. Stat. 1987, ch. 48, par. 1716(a)) from an order of respondent Illinois Educational Labor Relations Board (IELRB) issued February 11, 1988. The order found the District guilty of two unfair labor practices arising from the District's refusal to obey an arbitrator's award in favor of James Skinner, a tenured teacher in the District's system and a member of respondent Danville Education Association, IEA/NEA (DEA). The award found the District guilty of imposing unfair discipline upon Skinner when it failed to reappoint him to the extracurricular position of assistant track coach at Danville High School for the 1986-87 school year shortly before Skinner had been placed on supervision in the circuit court of Vermilion County on a charge of driving under the influence of intoxicating liquor.

The decision of the District not to reappoint Skinner was made on August 26, 1986, and reported to him on September 4, 1986. On or about September 23, 1986, DEA filed a grievance with the District alleging the decision violated section 7.7 of article VII of the collective-bargaining agreement between the District and DEA. That section states:

"Teacher Discipline. The Board agrees that its rules and regulations governing teacher conduct shall be reasonable and that enforcement of teacher discipline shall be fair and for cause."

The matter proceeded through a grievance procedure pursuant to article X of that agreement. Section 10.1 thereof provides for use of the grievance procedure for "[a]ny claim *** [of] a violation *** of [the] Agreement." Section 10.3 of that article requires eventual binding arbitration if the dispute is not settled at an earlier step.

The matter was not settled, and arbitration resulted. The arbitrator's award found the District had disciplined Skinner unfairly and required Skinner's reinstatement for the 1986-87 school year and back pay for the period he was not rehired.

Section 14(a)(8) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1714(a)(8)) makes the refusal of an educational employer such as the District to abide by a binding arbitration award an unfair labor practice. However, the refusal to abide by such an award is the accepted and only method of attacking the validity of the award. (*Board of Education of Community School District No. 1, Coles County v. Compton* (1988), 123 Ill. 2d 216, 526 N.E.2d 149.) We agree with IELRB that the proper procedure for it to follow in passing upon a charge of a violation of section 14(a)(8) is to determine:

(1) whether there is a binding arbitration award;

(2) what the content of the award is; and

(3) whether compliance has been made with the award.

See *Chicago Board of Education*, 2 Pub. Employee Rep. (Ill.) par. 1089, case No. 84—CA—0087—C (Illinois Educational Labor Relations Board, June 24, 1986), *aff'd in part, rev'd in part, and remanded sub nom. Board of Education v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 490, 524 N.E.2d 711 (Chicago Teachers Union, Local No. 1, respondent).

The principal issue here is whether a binding arbitration award exists. In contending no such award exists, the District maintains (1) if the collective-bargaining agreement required it to submit to arbitration the question of not renewing Skinner's appointment as an assistant track coach, that portion of the agreement was void due to its conflict with the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 1—2 *et seq.*); (2) the issue of the denial of reappointment was not a disciplinary measure and, thus, was not subject to the grievance and arbitration provisions; and (3) in any event, the arbitrator should not have required reappointment but merely awarded damages to Skinner.

Petitioner's first contention touches upon the tension between the contractual provision in regard to discipline of teachers in this and many similar collective-bargaining agreements and the provisions of sections 10—22.4 and 24—1 of the School Code (Ill. Rev. Stat. 1987, ch. 122, pars. 10—22.4, 24—1), which purport to give broad power to school boards to dismiss, appoint, and reappoint teachers subject to the tenure provisions of the School Code. These conflicts have to be resolved under the terms of sections 10(b) and 10(c) of the Act, which state:

> "(b) The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be *in violation of*, or *inconsistent with*, or *in conflict with* any statute or statutes enacted by the General Assembly of Illinois. The parties to the collective bargaining process may effect or implement a provision in a collective bargaining agreement if the implementation of that provision has the effect of *supplementing* any provision in any statute or statutes enacted by the General Assembly of Illinois pertaining to wages, hours or other conditions of employment; provided however, no provision in a collective bargaining agreement may be effected or implemented if such provision has the effect of negating, abrogating, replacing, reducing, diminishing, or limiting in any way any employee

rights, guarantees or privileges pertaining to wages, hours or other conditions of employment provided in such statutes. Any provision in a collective bargaining agreement which has the effect of negating, abrogating, replacing, reducing, diminishing or limiting in any way any employee rights, guarantees or privileges provided in an Illinois statute or statutes shall be void and unenforceable, but shall not affect the validity, enforceability and implementation of other permissible provisions of the collective bargaining agreement.

(c) The collective bargaining agreement negotiated between representatives of the educational employees and the educational employer *shall contain a grievance resolution procedure* which shall apply to all employees in the unit and *shall provide for binding arbitration* of disputes *concerning the administration or interpretation of the agreement.* The agreement shall also contain appropriate language prohibiting strikes for the duration of the agreement. The costs of such arbitration shall be borne equally by the educational employer and the employee organization." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, pars. 1710(b), (c).

The case of *Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 463, 524 N.E.2d 758, concerned the discharge of an employee of a State university subject to both the Act and "An Act to create the State Universities Civil Service System" (Ill. Rev. Stat. 1987, ch. 24½, par. 38b1 *et seq.*). The latter legislation created a classified civil service system for employees and procedures for discharge of those employees for cause. This court held that sections 10(b) and 10(c) of the Act did not prevent the employing universities and the bargaining representatives for its employees from agreeing upon an alternate procedure, to be used at the employee's option, for handling proceedings for discharge through a grievance procedure ending in binding arbitration.

*Board of Governors* did not involve the application of sections 10(b) and 10(c) of the Act to sections 10—22.4 and 24—1 of the School Code. The civil service legislation involved there had no provision similar to School Code sections 10—22.4 and 24—1. Moreover, this court noted the issue was not one whereby the collective-bargaining agreement delegated the power of an employer, as is involved here, but rather delegated the power of a civil service commission. This court expressly refused to pass upon the power of an employer to delegate through a collective-bargaining agreement its authority in regard to

dismissal of employees. (*Board of Governors,* 170 Ill. App. 3d at 481, 524 N.E.2d at 768.) Because of the particular circumstances of this case, we need not decide the effect of sections 10(b) and 10(c) upon the cited sections of the School Code, either.

■ Sections 10—22.4 and 24—1 of the School Code provide for a format of appointments and discharges whereby school teachers either have or can eventually acquire the tenure protection of the School Code. (Ill. Rev. Stat. 1987, ch. 122, pars. 24—11 through 24—16.) However, under Illinois decisions, extracurricular positions do not have to be filled by certified teachers, and those holding the extracurricular positions, regardless of certification, have no tenure rights to those positions. *School Directors of District U-46 v. Kossoff* (1981), 95 Ill. App. 3d 26, 419 N.E.2d 658; *Caviness v. Board of Education of Ludlow Community Consolidated School District No. 142* (1978), 59 Ill. App. 3d 28, 375 N.E.2d 157; *Betebenner v. Board of Education of West Salem Community High School District No. 201* (1949), 336 Ill. App. 448, 84 N.E.2d 569; see also *Smith v. Board of Education of Urbana School District No. 116* (7th Cir. 1983), 708 F.2d 258.

■ The effect of sections 10—22.4 and 24—1 of the School Code, when combined with the tenure provisions, were described prior to the Act as an expression of "public policy" which struck "an elaborate balance between [the need to eliminate inferior teachers] and the opposing interest in job security." (*Board of Education v. Chicago Teachers Union, Local 1* (1981), 88 Ill. 2d 63, 78, 430 N.E.2d 1111, 1118 (Simon, J., dissenting).) As the extracurricular position formerly held by Skinner is not encompassed within that "elaborate" legislative format, the provisions of the instant collective-bargaining agreement as applied here are clearly neither "in conflict with" nor "inconsistent with" the cited provisions of the School Code. We reject the District's first argument.

■ We must also reject the District's second contention that its action in refusing reappointment of Skinner to the coaching position was not a disciplinary action within the meaning of the collective-bargaining agreement. The District maintains its action was not disciplinary because it resulted in a failure to reappoint, and the action was not taken with an intent to discipline. At the outset, we must realize that, under the Act, the intent of the parties as to what issues were intended to be made subject to arbitration is largely a question for the arbitrator. The supreme court has recently stated:

"Since the Act specifically provides that all such collective agreements between educational employee unions and their employers must contain a clause which 'provide[s] for binding arbi-

tration of disputes concerning the administration [and] interpretation of the agreement' (Ill. Rev. Stat. 1985, ch. 48, par. 1710(c)), no question of the parties' intent to arbitrate can arise." *Board of Education of Community School District No. 1, Coles County v. Compton* (1988), 123 Ill. 2d at 222-23, 526 N.E.2d at 152-53.

Thus, as we have held that application of the "Teacher Discipline" clause of the agreement to the District's action in regard to Skinner's extracurricular position is not prohibited by section 10(b) of the Act, we must conclude the arbitrator could properly decide the question of whether the District's failure to reappoint Skinner was a disciplinary action within the meaning of the collective-bargaining agreement.

Neither IELRB nor reviewing courts have substantial authority to pass upon the propriety of the arbitrator's decision that the District's action was taken with an intent to discipline. Even prior to the Act, the common law reviewing powers of the circuit court over decisions of arbitrators in regard to disputes involving collective-bargaining agreements between public school districts and their teachers were quite limited. (*Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 427 N.E.2d 1199.) The IELRB, acting pursuant to the precedent of *Compton*, properly followed a similar although not fully articulated scope of review here, indicating no evidence of fraud, dishonesty, or serious error was present, and the arbitrator was at least arguably acting within the scope of his authority. For these reasons alone, the arbitrator's determination that the District acted with intent to discipline Skinner was fully supported.

Even under a much enlarged standard of review of the arbitrator's decision, his determination would be fully supportable. The award indicates that, upon learning of the charges against Skinner, the District superintendent sent a memorandum to Skinner, admonishing him of the seriousness of the conduct with which he was charged and its effect upon him in his profession. The memo mentioned a previous DUI charge had been made against Skinner, and the principal was sorry Skinner had not been taught more by that experience. In the concluding paragraph, the memorandum stated "further incidents of this nature may result in *serious disciplinary* action." (Emphasis added.) The arbitration award further recited that, a few days later, the high school principal approached Skinner and informed him that "if he was found guilty he would not be recommended for extracurricular activities."

The decision of the District to deny Skinner reappointment to the assistantship for track was announced and apparently made shortly

before he entered a plea of guilty to the criminal charge. In the light of the admonishments given Skinner and the threat that a repetition of his conduct would result in "serious" discipline, the District's action in refusing reappointment could reasonably have been found to have resulted from an intent upon the part of the District to discipline Skinner.

■ The District does not dispute that, if the issue of refusal to reassign was subject to arbitration because it was a disciplinary measure, the arbitrator's determination that the discipline was unfair must stand. However, the District finally argues the requirement to reappoint Skinner for the 1986-87 school year was improper, and it should have only been required to pay him damages. The District relies upon the decision in *Bessler v. Board of Education of Chartered School District No. 150* (1977), 69 Ill. 2d 191, 370 N.E.2d 1050. There, the court held the remedy for the breach of a nontenured teacher's contract was merely an award of monetary damages and not reinstatement. There, the school district had failed to give proper notice to a teacher in her first full year of employment that her contract would not be renewed. (Ill. Rev. Stat. 1971, ch. 122, par. 24—11.) Nevertheless, that district refused to employ her for the second full year. Although the teacher there did not have tenure, unlike here, a tenure track position and section 24—11 of the School Code were involved. We need not decide whether the ruling in *Bessler* would still be applicable here because, as we have indicated, tenure cannot be obtained for the coaching position held by Skinner. Section 10.1 of the collective-bargaining agreement gave the arbitrator "the right to award remedies that are just and proper" and, absent legislative prohibition, mandatory reappointment is a recognized remedy for an improper disciplinary measure. See *Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 463, 524 N.E.2d 758; see also *AFSCME v. State of Illinois, Department of Mental Health* (1988), 124 Ill. 2d 246.

Moreover, the arbitrator merely ordered reappointment for the 1986-87 school year. As pointed out in the brief of IELRB, the District has wide discretion in future years for determining whether to reappoint Skinner to the assistant coaching position, so long as any refusal to do so is not for an unfair disciplinary reason. Under the collective-bargaining agreement, actions taken as a disciplinary measure must be fair and just.

■ Having determined that a valid arbitration award existed, we now turn to the second and third prongs of the procedure adopted by IELRB for determining whether a party has failed to abide by an ar-

bitration award. We conclude the record before IELRB fully proves the existence of those factors. The contract award was for reinstatement and back pay, and the school district has admittedly failed to comply with the award.

The District was found guilty not only of violating section 14(a)(8) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1714(a)(8)) but also of violating section 14(a)(1) of the Act; that section makes "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under [the] Act" a further unfair labor practice. (Ill. Rev. Stat. 1987, ch. 48, par. 1714(a)(1).) No question has been raised as to the propriety of the second unfair labor practice being found as a derivative of the District's failure to abide by the arbitrator's award. (But see *Board of Education v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 490, 500, 524 N.E.2d 711, 717.) Accordingly, we affirm the order of IELRB as to both charges.

Affirmed.

LUND and KNECHT, JJ., concur.