THE BOARD OF EDUCATION OF ROCKFORD SCHOOL DISTRICT No. 205, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.—ROCKFORD EDUCATION ASSOCIATION, IEA-NEA, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   Nos. 4—93—0066, 4—93—0082 cons.

Argued December 14, 1993.—Opinion filed February 14, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

Thomas A. Bueschel (argued), of Conde, Stoner & Killoren, of Rockford, for Board of Education of Rockford School District No. 205.

Gregory J. Malovance and Lois H. Johnson (argued), both of Winston & Strawn, of Chicago, for Rockford Educational Association.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This case involves the review of a decision of the Illinois Educational Labor Relations Board (IELRB) which held (1) the Board of Education of Rockford School District No. 205 (District) violated section 14(a)(8) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1714(a)(8)), and, derivatively, section 14(a)(1) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 1714(a)(1)) by refusing to comply with the arbitrator's award; and (2) the Rockford Education Association (Association) failed to timely file its charge pursuant to section 14(a)(5) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 1714(a)(5)), thereby depriving the IELRB of jurisdiction to issue any order on that part of the charge. *Rockford School District No. 205*, 9 Pub. Employee Rep. (Ill.) par. 1040, No. 91—CA—0023—C (Illinois Educational Labor Relations Board December 29, 1992).

The District appeals that part of the IELRB's decision pertaining to its violation of sections 14(a)(8) and (a)(1) of the Act. The Association appeals that portion of the IELRB's decision which held the section 14(a)(5) charge was untimely filed. We affirm that part of the IELRB's order regarding the timeliness of the section 14(a)(5) charge. However, we reverse that part of the IELRB's decision regarding the violations of sections 14(a)(8) and (a)(1) of the Act.

The incident giving rise to this grievance occurred on October 25, 1988. On that day, Dr. Peter Wehrle was teaching his sixth-hour remedial reading class. One student, Rodney Evans, chose to sit in the seat of another student, Becky (last name unknown). After Rodney refused to leave Becky's seat and return to his own, Dr. Wehrle pulled Rodney from his seat, by his left arm, to a standing position. Rodney began swinging his arms at Dr. Wehrle, causing him to have to restrain Rodney in a "bear hug" manner. At this point, both Dr. Wehrle and Rodney were kneeling on the floor. Kevin Puckett, another student, came up behind Dr. Wehrle and grabbed him around the throat with his arms. This caused Dr. Wehrle to release Rodney and retreat from both students. Both students were referred to the principal's office. Dr. Wehrle taught his seventh-hour class and then went to the emergency room at the local hospital because he was having chest pains and difficulty in breathing. Upon his doctor's advice, he took the rest of the week off.

On November 1, 1988, Dr. Wehrle was informed by letter from the District that he was suspended with pay and a due process hearing was scheduled for November 8, 1988. Dr. Wehrle's attorney telephoned a representative from the District stating that Dr. Wehrle would not attend the November 8, 1988, hearing and asked for

a continuance pending the outcome of the criminal investigation of this incident. The due process hearing was rescheduled for November 14, 1988. However, Dr. Wehrle again did not attend this meeting. Based on the evidence presented to the District at that hearing, it issued Dr. Wehrle a "Notice to Remedy" pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 24—12). The notice to remedy provided:

> "You are hereby informed that your conduct as a teacher in this school district is deficient and unsatisfactory in the respects listed on exhibit '1' attached hereto and made a part hereof.

> This Board of Education informs you that the Board has determined these deficiencies to be causes, charges, reasons and defects, which if not removed, will result in charges against you and your dismissal as a teacher in the school district. You are hereby instructed to remove and remedy each and every cause, charge, reason and defect stated on exhibit '1' and to continue to so remediate for the balance of time of your employment with this school district."

Exhibit No. 1 listed "excessive physical violence relating to the incident of October 25, 1988," and "absence from teaching assignment without prior notification or permission on October 28, 1988," as the deficiencies to be remedied. Dr. Wehrle successfully completed the remediation period.

Shortly thereafter, he filed a grievance alleging the District, by issuing the notice to remedy, violated article 14, section B, of the parties' 1988-89 collective-bargaining agreement (the '88-'89 agreement) which was in effect at the time of the incident between himself and the two students. Article 14, section B, of the '88-'89 agreement states:

> "Every staff member has the right to fair and equitable treatment and accordingly shall not be acted against except for just cause."
> (Hereinafter the "just cause" provision.)

In his grievance, Dr. Wehrle sought to have the notice to remedy removed from his personnel file.

A memorandum from John Schmidt, the District's attorney, indicates that on December 2, 1988, he received a telephone call from Stephen Katz, the Association's attorney, stating that criminal charges were not being pursued against Dr. Wehrle. Thus, Dr. Wehrle wished "to tell his side of the story" to the District. Schmidt did not believe it would be possible to arrange such a meeting but agreed to set up a meeting with the director of secondary education. Schmidt agreed, upon Katz' inquiry, to waive any grievance-filing time limits until this meeting took place. However, this agreement was expressly conditioned upon the District's reserving its right to

challenge the applicability of the grievance-arbitration process to the issuance of the notice to remedy by the District. Katz agreed to this condition. Dr. Wehrle met with various District administrators between February and June 1989. During these meetings, he presented his version of the incident.

A demand for arbitration was filed on January 5, 1990. The District filed a motion to dismiss alleging it had the exclusive authority to determine whether conduct by teachers was remedial pursuant to sections 10—22.4 and 24—12 of the School Code (Ill. Rev. Stat. 1989, ch. 122, pars. 10—22.4, 24—12) and that such authority was not delegable, thus depriving the arbitrator of the authority or jurisdiction to issue an award. On June 28, 1990, the arbitrator denied the District's motion, finding the only issue to be addressed was whether the '88-'89 agreement had been violated. He concluded the District had violated that agreement by not according Dr. Wehrle fair and equitable treatment and acting against him without just cause. The arbitrator ordered the District to remove all material relating to the notice to remedy from Dr. Wehrle's personnel file.

On September 4, 1990, the District informed Dr. Wehrle that it believed the arbitrator was without jurisdiction to order the relief provided in his decision and to hear an arbitration matter regarding the authority of a board of education to issue a notice to remedy. The District believed the arbitrator's award was void and therefore declined to remove the documents relating to the notice to remedy from Dr. Wehrle's personnel file.

On November 7, 1990, the Association filed an unfair labor charge against the District pursuant to sections 14(a)(8), (a)(1), and (a)(5) of the Act. The complaint and notice of hearing pursuant to sections 14(a)(1) and (a)(8) of the Act was issued on January 7, 1991; however, the section 14(a)(5) charge was dismissed. (*Rockford School District 205*, 7 Pub. Employee Rep. (Ill.) par. 1021, No. 91—CA—0023—C (Illinois Educational Labor Relations Board, Executive Director's Recommended Decision, January 7, 1991).) The District filed its answer on January 22, 1991, in which it admitted certain allegations contained within the complaint but also alleged the arbitrator was without authority and jurisdiction to issue the award, thus making it invalid and nonbinding.

On June 7, 1991, the IELRB reinstated the section 14(a)(5) allegation and ordered the Executive Director to issue an amended complaint. The amended complaint and notice of hearing was issued on June 17, 1991. The amended complaint was served by certified mail and received by the District on June 18, 1991. *Rockford School District 205*, 7 Pub. Employee Rep. (Ill.) par. 1072, No. 91—CA—0023—C (Illinois Educational Labor Relations Board June 7, 1991).

A hearing was held before an administrative law judge (ALJ) on November 5, 1991. At that hearing, the District indicated it was unaware that the IELRB had not received its answer to the amended complaint until an agent for the IELRB telephoned on August 12, 1991, indicating she could not locate a copy of the answer. At this point, the District faxed a copy of the answer to the IELRB. The District contended there was a problem with the mail and that it had attempted in good faith to timely file its answer. The District sought leave to file a late answer.

The Association had filed a motion to strike the District's answer to the amended complaint and had also moved to have the allegations contained in the amended complaint deemed admitted. The ALJ granted the Association's motion, although he characterized it as deeming the admissions of the amended complaint as true rather than striking the answer. (See 80 Ill. Adm. Code § 1120.30(d)(3) (1985).) The ALJ was clear to state, however, that this admission only applied to the allegations of the amended complaint because there was a timely filed answer to the original complaint.

The ALJ issued his decision on March 11, 1992, in which he concluded the District did not violate sections 14(a)(8) and, derivatively, (a)(1) of the Act by failing to comply with the arbitrator's award because the grievance which was the subject of the arbitrator's award was inarbitrable under section 10(b) of the Act. (Ill. Rev. Stat. 1989, ch. 48, par. 1710(b).) The ALJ also concluded the Association had failed to file its section 14(a)(5) charge in a timely manner, and therefore, the IELRB lacked jurisdiction to issue any order on that part of the charge. The ALJ recommended dismissal of all charges. *Rockford School District No. 205*, 8 Pub. Employee Rep. (Ill.) par. 1040, No. 91—CA—0023—C (Illinois Educational Labor Relations Board, ALJ's Recommended Decision, March 11, 1992).

The Association filed exceptions to the ALJ's recommendations. The issue presented to the IELRB was "whether a school district's conduct leading to the issuance of a notice to remedy is arbitrable under a contract provision guaranteeing that an employee will be treated "fairly and impartially." On December 29, 1992, the IELRB affirmed the ALJ as to the section 14(a)(5) charge but reversed on the sections 14(a)(8) and (a)(1) charges. The IELRB concluded the arbitrator's award was a binding award and the District violated the Act by failing to comply with it. The District timely filed a petition for review regarding the section 14(a)(8) charge; the Association timely filed a petition for review of that part of the IELRB's order which concluded the section 14(a)(5) charge was untimely.

In its decision, the IELRB first noted that section 10(b) of the Act

provides that the parties to a collective-bargaining agreement shall not effect or implement a provision in the collective-bargaining agreement if the implementation of that provision would be in violation of, inconsistent with, or in conflict with any statute or statutes enacted by the Illinois legislature. The IELRB stated section 10(b) will only preclude arbitration when there is a specific statutory directive that requires such a result. The issue before the IELRB then was whether sections 10—22.4 and 24—12 of the School Code constituted a specific statutory directive, and if so, whether the arbitrator's interpretation of the parties' '88-'89 agreement violated, was inconsistent with, or in conflict with that statutory directive. The IELRB concluded these provisions did not constitute a specific statutory directive which the award violated. Rather, section 10—22.4 of the School Code simply gives a school board the power to dismiss teachers subject to the tenure provisions of the School Code, and section 24—12 of the School Code provides certain procedural guarantees for tenured employees who are subject to dismissal. The IELRB found nothing in the School Code which prohibited arbitration of a school board's conduct leading to the issuance of a notice to remedy under a provision of a collective-bargaining agreement that required that an employee be treated fairly and impartially and not be acted against without just cause.

These sections of the School Code grant a school board the general authority to dismiss teachers for certain reasons, provided, however, the procedures set forth in the School Code are followed. The IELRB noted that the situation which occurred here, *i.e.*, a notice to remedy, followed by a successful remediation period, is not addressed by section 24—12 of the School Code. That section provides the proper procedures for when a tenured teacher is dismissed. The IELRB rejected the District's contention that dismissal of tenured teachers is within the exclusive discretion of a school board, noting that, under the terms of section 24—12 of the School Code, a hearing officer selected from a list provided by the State Board of Education can review a determination that cause for dismissal existed and overturn that determination if necessary.

The IELRB concluded the School Code provided no explicit procedural protection for an employee in Dr. Wehrle's situation. Because Dr. Wehrle was not dismissed, the procedural protections of section 24—12 of the School Code were not available and he had no forum under the School Code in which to seek an independent review of the District's decision to begin dismissal proceedings against him through the issuance of a notice to remedy. Thus, the right to review by an independent and impartial arbitrator under the "just cause"

provision of the '88-'89 agreement provided his only forum for such review. In sum, the right given to Dr. Wehrle to fair and equitable treatment under the '88-'89 agreement was not in conflict with the School Code but instead supplemented his rights under the School Code. The arbitrator's award did not violate, nor was it inconsistent or in conflict with, section 10(b) of the Act. The IELRB concluded the District violated sections 14(a)(8) and (a)(1) of the Act by failing to comply with the award.

The issue before the IELRB as to the section 14(a)(5) charge was whether the Association had notice, more than six months prior to the date on which it filed the charge, that the District would assert a defense of nondelegability in this arbitration. The ALJ determined the Association had notice of the unfair labor practice as of December 2, 1988, when its attorney, Katz, asked the District's attorney, Schmidt, if the District would waive the grievance-filing time limits, and Schmidt agreed on the understanding that the District retained its right to challenge the applicability of the grievance process to the issuance of a notice to remedy. The IELRB concluded the proper focus was the point at which the District asserted the defense of non-delegability to the arbitration of Dr. Wehrle's grievance, and not when the District refused to comply with the arbitration award (September 4, 1990) as the Association alleged.

The IELRB found the Association had notice of the District's unfair labor practice in this case on April 14, 1990, when the District filed its motion to dismiss the arbitration on the grounds of nondelegability. The statute of limitations began to run on that date and the unfair labor practice charge filed November 7, 1990, more than six months from April 14, 1990, was untimely.

The IELRB ordered the District to (1) cease and desist from refusing to comply with the arbitrator's award, (2) rescind the November 14, 1988, notice to remedy, and (3) remove all printed material relating to the October 25, 1988, incident from Dr. Wehrle's personnel file.

The District contends the IELRB erred by finding that charges of dismissal of a tenured teacher and the remediability of such charges are subject to arbitration. The District asserts that the arbitrator's award is an implementation of a contractual provision in conflict with and inconsistent with sections 10—22.4 and 24—12 of the School Code in violation of section 10(b) of the Act. The District further contends the IELRB erred by concluding that the School Code does not provide that a notice to remedy may be kept as part of an employee's permanent record, nor does it prohibit the removal of such notice from the employee's personnel file.

The Association contends the District had the authority to

contractually limit its general statutory power to issue a notice to remedy by promising that it would only take such action for "just cause" because such a contractual provision is within the scope of a permissive subject of collective bargaining as a condition of employment. Furthermore, the Association alleges the arbitrator's award does not violate section 10(b) of the Act by conflicting with the School Code, but in fact supplements a tenured teacher's rights, where no statutory appeal procedures exist, *i.e.*, to appeal the issuance of a notice to remedy. Finally, the Association contends there is no specific statutory directive which definitively prohibits the application of a "just cause" standard to the issuance of a notice to remedy.

On review of an administrative decision, it is not the court's function to reweigh the evidence or make an independent determination of facts, but rather, to ascertain whether the findings and the decision of the agency are against the manifest weight of the evidence. (*Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117.) An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. (Ill. Rev. Stat. 1991, ch. 110, par. 3—110.) As a general rule, courts will accord deference to the interpretation placed on a statute by the agency charged with its administration. However, a reviewing court is not bound by an agency's conclusions of law and those conclusions will be rejected when erroneous. *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222.

■ Section 14(a)(1) of the Act prohibits, as an unfair labor practice, educational employers, their agents or representatives from interfering, restraining, or coercing employees in the exercise of their rights under the Act. Section 14(a)(8) of the Act renders the refusal to comply with the provisions of a binding arbitration award an unfair labor practice. However, the refusal to abide by such an award is the accepted and only method of attacking the validity of the award. (*Board of Education of Community School District No. 1, Coles County v. Compton* (1988), 123 Ill. 2d 216, 225-26, 526 N.E.2d 149, 154.) The proper procedure to follow in passing upon a charge of a violation of section 14(a)(8) of the Act is to determine:

"(1) whether there is a binding arbitration award;

(2) what the content of the award is; and

(3) whether compliance has been made with the award." (*Board of Education of Danville Community Consolidated School District No. 118 v. Illinois Educational Labor Relations Board* (1988), 175 Ill. App. 3d 347, 349-50, 529 N.E.2d 1110, 1112.)

The principal issue presented here is whether a binding arbitration award exists.

Section 10(b) of the Act provides:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective[-]bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois. The parties to the collective[-]bargaining process may effect or implement a provision in a collective[-]bargaining agreement if the implementation of that provision has the effect of supplementing any provision in any statute or statutes enacted by the General Assembly of Illinois pertaining to wages, hours or other conditions of employment; provided however, no provision in a collective[-]bargaining agreement may be effected or implemented if such provision has the effect of negating, abrogating, replacing, reducing, diminishing, or limiting in any way any employee rights, guarantees or privileges pertaining to wages, hours or other conditions of employment provided in such statutes. Any provision in a collective[-]bargaining agreement which has the effect of negating, abrogating, replacing, reducing, diminishing or limiting in any way any employee rights, guarantees or privileges provided in an Illinois statute or statutes shall be void and unenforceable, but shall not affect the validity, enforceability and implementation of other permissible provisions of the collective[-]bargaining agreement." Ill. Rev. Stat. 1989, ch. 48, par. 1710(b).

Section 10—22.4 of the School Code gives a school board the following power:

"Dismissal of teachers. To dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause, to dismiss any teacher who fails to complete a 1-year remediation plan with a 'satisfactory' or better rating and to dismiss any teacher whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24—10 to 24—15, inclusive. Temporary mental or physical incapacity to perform teaching duties, as found by a medical examination, is not a cause for dismissal. Marriage is not a cause of removal." (Ill. Rev. Stat. 1989, ch. 122, par. 10—22.4.)

Section 24—12 of the School Code provides:

"If a dismissal or removal is sought for any other reason or cause, including those under Section 10—22.4, the board must first approve a motion containing specific charges by a majority vote of all its members. Written notice of such charges shall be

served upon the teacher within 5 days of the adoption of the motion. Such notice shall contain a bill of particulars. No hearing upon the charges is required unless the teacher within 10 days after receiving notice requests in writing of the board that a hearing be scheduled, in which case the board shall schedule a hearing on those charges before a disinterested hearing officer on a date no less than 15 nor more than 30 days after the enactment of the motion. ***

Before setting a hearing on charges stemming from causes that are considered remediable, a board must give the teacher reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges; however, no written warning shall be required if the causes have been the subject of a remediation plan pursuant to Article 24A." Ill. Rev. Stat. 1989, ch. 122, par. 24—12.

Finally, article 14, section B, of the '88-'89 agreement provides "Every staff member has the right to fair and equitable treatment and accordingly shall not be acted against except for just cause."

The District contends the determination of whether the nondelegability doctrine was abrogated by the enactment of section 10(b) of the Act is squarely before this court and further contends this doctrine is still viable today within the context of sections 10—22.4 and 24—12 of the School Code. It concludes the application of a "just cause" provision in a collective-bargaining agreement to the issuance of a notice to remedy involves the delegation of a school board's authority to dismiss tenured teachers, thereby violating the doctrine of nondelegability.

On the other hand, the Association does not believe the doctrine of nondelegability still exists nor does it unequivocally believe it was abrogated by the Act. Rather, it notes that under the powers and authority granted to school boards by the Act, certain previously nondelegable subjects have become mandatory bargaining subjects or permissive bargaining subjects. Thus, if a contractually agreed-upon provision pertains to either a mandatory or permissive subject of collective bargaining, that provision is arbitrable. The Association notes that section 10 of the Act provides school boards with both the authority and the duty to bargain collectively with respect to wages, hours, and other terms and conditions of employment. It concludes that a "just cause" standard for the discipline of teachers is a "term and condition of employment" within the meaning of section 10 of the Act, and that this section therefore expressly authorizes school boards to agree to a "just cause" limitation to its general power under the School Code to issue a notice to remedy. The Association

notes, however, that this authority to agree to such a provision is subject to the provisions of section 10(b) of the Act.

No court has specifically determined whether the Act has extinguished the nondelegability doctrine. See, *e.g.*, *Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 463, 481, 524 N.E.2d 758, 768 (wherein this court expressly refuses to pass upon the power of an employer to delegate through a collective-bargaining agreement its authority in regard to dismissal of employees); see also *Danville Community*, 175 Ill. App. 3d at 352, 529 N.E.2d at 1113 (wherein this court declined to decide the effect of sections 10(b) and (c) of the Act upon certain sections of the School Code); Perkovich & Stein, *Challenges to Arbitration Under Illinois Public Sector Labor Relations Statutes*, 7 Hofstra Lab. L.J. 191 (1989).

Although there may be a necessity for determining the continuing validity of the nondelegability doctrine, the issue presented by this appeal can be resolved without making such a determination. As both the District and the Association allege, the question to be answered is whether the arbitrator's award violates section 10(b) of the Act. If it does, it is not a valid and binding award, and the District could not have committed an unfair labor practice by failing to comply with the award.

The issue then becomes whether the arbitrator's award violates, or is in conflict or inconsistent with, section 10(b) of the Act. Under section 10(b) of the Act, if an arbitration award is contrary to a specific law or statute, then the award is nonbinding and the IELRB cannot enforce it. *Faculty Association of District 205 v. Illinois Educational Labor Relations Board* (1988), 175 Ill. App. 3d 880, 890, 530 N.E.2d 548, 555.

The District contends the arbitrator's award conflicts with sections 10—22.4 and 24—12 of the School Code because the plain language of those sections and the legislative intent establish that a school board alone was intended to exercise its discretion with respect to the dismissal of tenured teachers and issues of remediability. The District also suggests the creation of an alternative forum for review of discharge decisions, through an arbitration process, will directly conflict with section 24—12 of the School Code, which allows a teacher to request a hearing on the charges forming the basis for the dismissal. Finally, the District alleges the creation of these multiple forums of review will cause chaos and disorder and interfere with the policy of the Act to promote orderly and constructive relationships between all education employees and employers.

The Association alleges there must be a specific statutory

directive which explicitly and definitively prohibits an educational employer from making an agreement as to a particular term or condition of employment. The Association contends the District has not articulated any such specific statutory directive. The Association further contends the application of a "just cause" provision in a collective-bargaining agreement to the issuance of a notice to remedy supplements a tenured teacher's rights under the School Code, thus creating a right to challenge or review the issuance of a notice to remedy where no statutory appeal procedures exist. Last, the Association relies upon this court's decision in *Board of Governors* to support its conclusion that the "just cause" provision in the '88-'89 agreement supplements the School Code and is therefore valid under section 10(b) of the Act.

First, while there are similarities between the instant case and *Board of Governors*, it is distinguishable. That case involved the discharge of an employee of a State university subject to both the Act and "An Act to create the State University Civil Service System" (Ill. Rev. Stat. 1987, ch. 24¹/₂, par. 38b(1) *et seq.*). That statute created a classified civil service system for employees and procedures for discharge of those employees for cause. This court held that sections 10(b) and (c) of the Act did not prevent the employing universities and the bargaining representatives for their employees from agreeing upon an alternate procedure, to be used at the employee's option, for handling proceedings for discharge through a grievance procedure ending in binding arbitration. *Board of Governors*, 170 Ill. App. 3d at 480, 524 N.E.2d at 768.

As we noted in *Danville Community*, *Board of Governors* did not involve the application of sections 10(b) and (c) of the Act to sections 10—22.4 and 24—12 of the School Code. The civil service legislation involved there had no provisions similar to sections 10—22.4 and 24—12 of the School Code. Likewise, the issue there was not one whereby the collective-bargaining agreement delegated the power of an employer, as here, but rather delegated the power of a civil service commission. *Danville Community*, 175 Ill. App. 3d at 351, 529 N.E.2d at 1113.

■ Section 10(b) of the Act prohibits the implementation of a provision in a collective-bargaining agreement which would be in violation of, or inconsistent or in conflict with, any statute enacted by the Illinois legislature. The IELRB's application of the "just cause" provision of the '88-'89 agreement is inconsistent and conflicts with sections 10—22.4 and 24—12 of the School Code. Section 10—22.4 of the School Code provides the reasons upon which a school board may rely to dismiss a tenured teacher. Section 24—12 of the School Code

provides the procedure to be followed in such a dismissal. To allow an arbitrator to decide whether a school board acted with "just cause" in bringing dismissal charges against a tenured teacher would in effect give the arbitrator "veto power" over the determination by such school board of whether the dismissal should have occurred. Such a veto power is inconsistent and conflicts with the School Code, which grants this power to school boards. The Illinois legislature has determined that a school board has the sole authority to decide whether a dismissal is warranted and an interpretation of a collective-bargaining agreement provision which gives that power to an arbitrator clearly violates section 10(b) of the Act.

■ The Association also contends Dr. Wehrle was without a remedy to challenge the issuance of the notice to remedy because the School Code does not provide for a hearing on the issuance of the notice to remedy. Clearly, the School Code does not specifically provide for a hearing regarding the issuance of notice to remedy. However, the District's own policy allowed for such a hearing. Nevertheless, Dr. Wehrle chose not to participate in that hearing, even after the District granted his request for a continuance of the originally scheduled hearing date.

In *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 515 N.E.2d 1222, the supreme court held that school boards are entitled to suspend tenured teachers. The supreme court also held that although tenured teachers who face suspension are not entitled to a section 24—12 hearing, they are entitled to procedural due process. (*Spinelli*, 118 Ill. 2d at 406, 515 N.E.2d at 1230.) There, the school board's policy required that a teacher be given written notice of the charges upon which the suspension proceedings were based, and allowed for a hearing before the school board no more than 20 days from the date it was requested, with the teacher to be given the opportunity to be represented by counsel, cross-examine witnesses and present evidence. The supreme court held such a policy afforded tenured teachers procedural due process.

The District's policy here is similar to that in *Spinelli*. Although not required by the School Code, the District chose to provide Dr. Wehrle a due process hearing on the issuance of the notice to remedy. However, he chose not to participate in that hearing (or the rescheduled hearing), and thus cannot now complain about having no opportunity to challenge the issuance of the notice to remedy.

In conclusion, the arbitration award violated section 10(b) of the Act, because it was contrary to a specific section of the School Code which allows a school board to determine whether cause for dismissal exists, whether such charges are remediable, and whether

such charges are warranted. Therefore, the award is nonbinding, and the IELRB cannot enforce it.

Finally, the District contends it is entitled to rely upon the existence of prior remediation notices and discharge decisions to aid in making a subsequent decision to issue another notice to remedy or to dismiss a tenured teacher. The IELRB noted the School Code does not specifically state whether a notice to remedy must be kept as part of an employee's permanent record nor does it prohibit the removal of a notice to remedy from a teacher's personnel file. However, the District asserts that there is judicial precedent for considering accumulation of otherwise remediable conduct in determining discharge issues.

Our determination that the award was invalid and nonbinding makes it unnecessary to address this issue. Because the award which ordered the removal of all documentation relating to the notice to remedy is invalid, that documentation shall remain in Dr. Wehrle's personnel file. The issue of whether the District can rely upon that information in future disciplinary matters need only be resolved if such measures are taken by the District at a later date.

The Association has appealed the IELRB's determination that it had notice of the District's unfair labor practice on April 14, 1990, thereby making the filing of the section 14(a)(5) charge on November 7, 1990, untimely. The Association agrees that the issue presented, as determined by the IELRB, was whether it had notice that the District would assert the nondelegability defense in Dr. Wehrle's arbitration more than six months prior to the date on which it filed the section 14(a)(5) charge. The Association alleges it did not have notice that the District would take this position until the arbitration award was issued on June 28, 1990.

Because of our resolution of the District's appeal, we will not discuss this issue raised by the Association. Our review of the record indicates the IELRB correctly concluded the filing of the section 14(a)(5) charge was untimely.

In conclusion, that part of the IELRB's order pertaining to the section 14(a)(5) charge is affirmed. That part of the IELRB's order which held the District violated sections 14(a)(8) and (a)(1) of the Act is reversed.

Affirmed in part; reversed in part.

COOK and LUND, JJ., concur.