GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT No. 9, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—95—0507

Argued April 17, 1996.—Opinion filed April 25, 1996.

William W. Schooley III (argued), of Law Offices of William W. Schooley, of Granite City, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Karen J. Dimond (argued), Assistant Attorney General, of counsel), for respondents.

JUSTICE GREEN delivered the opinion of the court:

Petitioner Granite City Community Unit School District No. 9 (District) has taken administrative review to this court (115 ILCS 5/16 (West 1994)) from an order of respondent Illinois Educational Labor Relations Board (Board). *Granite City Community School District 9*, 11 Pub. Employee Rep. (Ill.) par. 1053, No. 94—CA—0035—S (Illinois Educational Labor Relations Board May 24, 1995). The order of the Board affirmed the finding of an administrative law judge (ALJ) that the District had violated section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1) (West 1994)) by refusing to arbitrate a grievance. We affirm.

The facts of this case are not in dispute. On January 12, 1994, Wanda Carroll, a certified employee of the District, was shoved twice by one of her students. Carroll reported the matter to her principal, James Jeffries. A conference with Jeffries, Carroll, and the student's parents was held, following which Carroll stated she would file a police report on the incident. Carroll noticed the student in school the next day and demanded Jeffries explain why the student had not been suspended. After Jeffries explained to Carroll his decision not to suspend the student, Carroll allegedly called Jeffries a "wimp."

Jeffries then requested Carroll to go home for the remainder of the day, without pay. Carroll at first ignored this request, but later that morning, after meeting with Jeffries, his supervisor Tom Holloway, and Granite City Federation of Teachers (Union) President Tom

Turner, Carroll left school for the day. She returned to work the following day.

A notice of disciplinary hearing was sent to Carroll on January 31, notifying her the District would hold an administrative hearing on February 22 regarding Carroll's exchange with Jeffries. Following the hearing, Carroll received a one-day suspension without pay for her conduct toward Jeffries. The District decided the one-day suspension would be considered served on January 13, the day Carroll was originally asked to go home. As the Board noted in its decision, the record does not disclose any District policy or rule upon which the suspension was based. The District apparently never contemplated dismissing Carroll.

On March 11, representatives of the Union and the District signed a letter agreeing to bypass the last two steps in the grievance procedure and to proceed directly to arbitration. On March 15, the Union filed a demand for arbitration with the American Arbitration Association (Association). The District notified the Association that it did not feel the matter was arbitrable and that it would not abide by any arbitration award. The Association found an arbitrable issue existed and set a hearing date of August 26.

On March 18, the Union first filed with the Board an unfair labor practice charge against the District. Eventually, the sole charge that emerged was the Union's claim that the District violated section 14(a)(1) of the Act by refusing to arbitrate the grievance. On June 30, a complaint and notice of hearing were issued. On November 10, the ALJ issued her recommended decision and order, finding the matter arbitrable and concluding the District had violated section 14(a)(1) of the Act by refusing arbitration. *Granite City Community Unit School District 9*, 10 Pub. Employee Rep. (Ill.) par. 1133, No. 94—CA—0035—S (Illinois Educational Labor Relations Board, Administrative Law Judge's Recommended Decision and Order, November 10, 1994). On May 24, 1995, the Board issued its final order affirming the decision of the ALJ, and this appeal followed.

■ Our review of rulings made by an administrative agency extends to all questions of law and fact presented by the record. 735 ILCS 5/3—110 (West 1994); *Southwest Energy Corp. v. Pollution Control Board*, 275 Ill. App. 3d 84, 90, 655 N.E.2d 304, 308 (1995). However, we do not accord questions of fact and questions of law the same degrees of deference. *Township of Harlem v. Environmental Protection Agency*, 265 Ill. App. 3d 41, 44, 637 N.E.2d 1252, 1254 (1994). We consider an agency's findings of fact to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1994); *Du Page Area Vocational Education Authority v. State of Illinois Educational Labor Relations*

*Board,* 167 Ill. App. 3d 927, 937, 522 N.E.2d 292, 298 (1988). While an agency's interpretation of a statute which that agency is charged with administering and enforcing is entitled to some deference, we are not bound by that agency's rulings on questions of law. *City of Burbank v. Illinois State Labor Relations Board,* 128 Ill. 2d 335, 345, 538 N.E.2d 1146, 1149 (1989).

■ A charge that a party has committed an unfair labor practice as a result of an arbitrability dispute may arise in two different contexts. Following arbitration, a party's refusal to abide by a binding arbitration award may establish an unfair labor practice under section 14(a)(8) of the Act (115 ILCS 5/14(a)(8) (West 1994)). See, *e.g.,* *Board of Education of Danville Community Consolidated School District No. 118 v. Illinois Educational Labor Relations Board,* 175 Ill. App. 3d 347, 349, 529 N.E.2d 1110, 1112 (1988); *Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board,* 277 Ill. App. 3d 440, 445, 660 N.E.2d 151, 154 (1995); *Faculty Ass'n of District 205 v. Illinois Educational Labor Relations Board,* 175 Ill. App. 3d 880, 890, 530 N.E.2d 548, 555 (1988). Alternatively, disputes over arbitrability may also constitute an unfair labor practice where arbitration has been refused, as section 14(a)(1) of the Act makes the refusal to submit an employee grievance to arbitration an unfair labor practice. *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board,* 173 Ill. App. 3d 395, 409, 527 N.E.2d 538, 547 (1988).

■ In defense of a refusal to arbitrate a dispute, a party may claim arbitration of the disputed matter would violate section 10(b) of the Act (115 ILCS 5/10(b) (West 1994)). Section 10(b) of the Act states in part: ·

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be *in violation of, or inconsistent with, or in conflict with* any statute or statutes enacted by the General Assembly of Illinois." (Emphasis added.) 115 ILCS 5/10(b) (West 1994).

The Board has held there are two defenses to an unfair labor practice charge resulting from a refusal to arbitrate: an employer may assert either (1) the collective-bargaining agreement excludes the disputed matter from arbitration, or (2) even if arbitration was contemplated in the agreement, arbitration of the matter would be "in violation of, or inconsistent with, or in conflict with" another statutory provision (see 115 ILCS 5/10(b) (West 1994)). See *River Grove School District No. 85$^1$/$_2$,* 3 Pub. Employee Rep. (Ill.) par. 1019, No. 86—CA—0034—C, at VII—58 (Illinois Educational Labor Relations Board January 30, 1987).

■ The District wisely concedes the broad grievance clause in the parties' collective-bargaining agreement encompasses the matter disputed here. See *Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board*, 200 Ill. App. 3d 370, 378, 558 N.E.2d 751, 757 (1990) (arbitration clauses are broadly construed and will be found to cover a dispute absent an express exclusion of the disputed matter). In light of this concession, the sole issue before us is whether arbitration of the propriety of the temporary suspension of Carroll would be "in violation of, or inconsistent with, or in conflict with" another statutory provision. We find arbitration of this matter would not offend section 10(b) of the Act.

The District relies on *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 649 N.E.2d 369 (1995), and *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 515 N.E.2d 1222 (1987), in asserting that arbitration of the instant matter would violate section 10(b) of the Act. In *Rockford*, the school board had issued a "notice to remedy" to a tenured teacher accused of misconduct. Section 10—22.4 of the School Code gives the school board the power to dismiss teachers. See 105 ILCS 5/10—22.4 (West 1994). Section 24—12 of the School Code allows the school board, where teacher misconduct which would justify dismissal is alleged to have occurred, to decide whether the teacher's conduct is remediable. See 105 ILCS 5/24—12 (West 1994). If the school board decides the conduct is remediable, the teacher is given the opportunity to correct his conduct and avoid dismissal. Section 24—12 sets forth the procedure to be followed when dismissing a tenured teacher and requires the school board to provide a written warning to a teacher that his conduct is remediable, if such is the case. See 105 ILCS 5/24—12 (West 1994). The "notice to remedy" is one type of warning which satisfies section 24—12. *Rockford*, 165 Ill. 2d at 91, 649 N.E.2d at 374.

The arbitrator in *Rockford* looked to a "just cause" provision in the parties' collective-bargaining agreement, found no just cause existed for the "notice to remedy," and ruled that the "notice to remedy" should be rescinded. *Rockford*, 165 Ill. 2d at 84, 649 N.E.2d at 370. The supreme court affirmed this court's holding that allowing an arbitrator to determine whether there was just cause to issue a "notice to remedy" would be inconsistent or conflict with sections 24—12 and 10—22.4 of the School Code. *Rockford*, 165 Ill. 2d at 92, 649 N.E.2d at 374. The supreme court rejected the Board's assertion that a provision of a collective-bargaining agreement must conflict with a "specific statutory directive" which "explicitly and definitively" prohibits the agreement at issue to fall within the meaning of section

10(b) limits on collective bargaining. *Rockford*, 165 Ill. 2d at 87, 649 N.E.2d at 372; see also *Midwest Central*, 277 Ill. App. 3d at 447, 660 N.E.2d at 156. Rather, the *Rockford* court held that a "notice to remedy" was an "integral part of the statutory scheme for dismissal" and that the issuance in that case had occurred "within the confines of the School Code's statutory removal process." *Rockford*, 165 Ill. 2d at 91, 649 N.E.2d at 374. Permitting the interjection of arbitration at that point in the dismissal process would establish "a duplicate method for ultimately challenging the process for dismissal." *Rockford*, 165 Ill. 2d at 92, 649 N.E.2d at 374. Thus, the supreme court found that no binding arbitration award existed.

The District argues the *Rockford* holding, when viewed in light of the supreme court's holding in *Spinelli*, compels the conclusion that arbitration of the matter here would violate section 10(b) of the Act. The court in *Spinelli* had to decide whether a local school board had the power to order the temporary suspension of a tenured teacher. Although the court found no express statutory authorization for the action taken by the school board, the *Spinelli* court did find the power to suspend teachers was implied in section 10—20.5 of the School Code (see 105 ILCS 5/10—20.5 (West 1994)). *Spinelli*, 118 Ill. 2d at 405, 515 N.E.2d at 1229. Under section 10—20.5 of the School Code, school boards have the duty to "adopt and enforce all necessary rules for the management and government of the public schools of their district." 105 ILCS 5/10—20.5 (West 1994). In order to carry out this duty, school boards have the implied power to mete out temporary disciplinary suspensions. *Spinelli*, 118 Ill. 2d at 405, 515 N.E.2d at 1229.

*Rockford* and *Spinelli* do not lead us to conclude that arbitration of the temporary suspension at issue here would violate section 10(b) of the Act, as suggested by the District. The "notice to remedy" in *Rockford* was an integral part of the removal process—the power to remove teachers was expressly given to the school board by statute, and this power could only be exercised according to a detailed and elaborate statutory procedural framework. Permitting an arbitrator's judgment to be interposed early in the statutory process of removal would, in effect, preempt any possible decision by the school board and render the power of dismissal a hollow one in the hands of the board. Here, in contrast, no such statutory power would be usurped by the arbitrator if arbitration was allowed to proceed. A temporary disciplinary suspension is not a first step in a statutorily defined process over which the school board has been given ultimate decision-making authority. While the issuance of a "notice to remedy" is but one step of many in the removal process, a temporary suspension, as

it occurred in this case, is at once both a first and final decision, devoid of any connection to an overarching statutory framework.

The District in its brief fails to specify any particular statutory provision with which an arbitrator's ruling in this case would conflict. The District's inability to point to a conflicting statutory scheme supports the conclusion that the temporary disciplinary suspension here was not an integral part of any statutory process. Had the District relied on sections 24—12 and 10—22.4 in asserting a potential conflict with the School Code, such reliance would have been foreclosed by the supreme court's holding in *Spinelli*. After the *Spinelli* court found the school board possessed the implied power to suspend teachers temporarily, the court was then faced with the question of whether the school board, in temporarily suspending the teacher, was required to follow the notice and hearing procedures set forth in section 24—12. The *Spinelli* court answered in the negative, finding section 24—12 of the School Code applied only to the "removal or dismissal" of tenured teachers. *Spinelli*, 118 Ill. 2d at 405-06, 515 N.E.2d at 1229-30. Thus, an arbitrator's ruling on the propriety of a temporary suspension cannot conflict with section 24—12 or 10—22.4 of the School Code, unless the suspension is ordered pending a dismissal hearing. Here, there is no evidence in the record to indicate dismissal was ever contemplated by the District.

This leaves section 10—20.5 of the School Code as the only remaining section with which an arbitrator's ruling on a temporary suspension could potentially conflict. (Again, the District's failure to suggest specific statutory sections where potential conflict might arise makes it difficult for this court to address the District's contention that section 10(b) of the Act would be violated by arbitration of the instant matter.) As noted previously, section 10—20.5 establishes a school board's duty to "adopt and enforce all necessary rules for the management and government of the public schools of their district." 105 ILCS 5/10—20.5 (West 1994). We cannot conclude that a temporary disciplinary suspension is an "integral part" of any "statutory scheme" based on this section of the School Code. See *Rockford*, 165 Ill. 2d at 91, 649 N.E.2d at 374. This section merely establishes a general duty on the part of the school board, a duty from which, under *Spinelli*, an implied power to temporarily suspend teachers arises. See *Spinelli*, 118 Ill. 2d at 405, 515 N.E.2d at 1229. There is no statutory scheme or process apparent in this section, in contrast to the statutory removal scheme at issue in *Rockford*. Moreover, permitting arbitration here does not result in a "duplicate method" for challenging a comprehensive statutory process, as was found in *Rockford*. See *Rockford*, 165 Ill. 2d at 92, 649 N.E.2d at 374.

We further note that *Spinelli* did not involve a collective-bargaining agreement, and the supreme court did not address how section 10(b) of the Act might affect the implied power found to exist in *Spinelli*.

If the District is contending that arbitration of the suspension here would violate section 10(b) of the Act because arbitration would be "in violation of, or inconsistent with, or in conflict with" the implied power of the District, as found in *Spinelli*, to temporarily suspend teachers, we reject this contention as well. A school board is possessed of those powers expressly conferred upon it by the General Assembly, as well as those powers necessary to carry into effect the powers granted by the legislature. *Spinelli*, 118 Ill. 2d at 403, 515 N.E.2d at 1228. Simply because a school board is possessed of a power does not imply that the board may never agree through a collective-bargaining agreement to have an arbitrator supervise the board's exercise of that power. The District is free, via a collective-bargaining agreement, to delegate any powers it has to an arbitrator, as long as the exercise of those powers by the arbitrator would not be "in violation of, or inconsistent with, or in conflict with" a specific statutory provision or an integral part of any statutory scheme. See 115 ILCS 5/10(b) (West 1994); *Rockford*, 165 Ill. 2d at 91, 649 N.E.2d at 374.

The District complains that permitting arbitration in the instant matter would, in effect, give an arbitrator a "veto power" over decisions of the school board. It is true this court in *Rockford* held that permitting an arbitrator to make "just cause" determinations in the course of dismissal proceedings would give the arbitrator a "veto power" over eventual dismissal decisions by the school board. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 258 Ill. App. 3d 859, 872, 629 N.E.2d 797, 806 (1994), *aff'd*, 165 Ill. 2d 80, 649 N.E.2d 369 (1995). However, it was not this veto power alone which this court found objectionable. In a sense, every arbitrator in these matters possesses a "veto power" over the school board, in that arbitrators routinely issue valid and binding arbitration rulings contrary to positions espoused by school boards. This veto power only becomes objectionable when its exercise is "in violation of, or inconsistent with, or in conflict with" a specific statutory provision or an integral part of a statutory scheme. See 115 ILCS 5/10(b) (West 1994); *Rockford*, 258 Ill. App. 3d at 872, 629 N.E.2d at 806. While this court found the "veto power" at issue in *Rockford* to be inconsistent and in conflict with the removal process set forth in the School Code, here there is no corresponding statutory section which would make an arbitrator's award objectionable. See *Danville*, 175 Ill. App. 3d 347, 529 N.E.2d 1110 (finding no conflict or inconsistency with the School Code where arbitrator ordered reinstatement

of teacher to an extracurricular position, since the "public policy" behind the School Code concerned removing inferior teachers from teaching positions only); *Midwest Central*, 277 Ill. App. 3d 440, 660 N.E.2d 151 (finding a clear violation of section 10(b) where arbitrator ordered reinstatement of nontenured teacher but school board was given specific statutory authority to make such decisions); *District 205*, 175 Ill. App. 3d 880, 530 N.E.2d 548 (arbitrator had no power to find an uncertified nurse to be tenured and arbitrator's award ordering reinstatement conflicted with statute which required untenured nurses to be dismissed before those with tenure).

The District also suggests a finding in the Board's favor on this issue could lead to "incongruous result[s]." The District posits the scenario where a school board might want to order both a "notice to remedy" and a temporary disciplinary suspension in response to one instance of teacher misconduct. The District claims it would be "incongruous" if the "notice to remedy" was not subject to arbitration but the suspension was. We agree with the Board, however, that the District fails to explain exactly what would be objectionable about its proffered scenario. If the suspension was not ordered pending dismissal proceedings, this scenario could, in fact, occur, but we fail to see what would be troubling about such an occurrence.

For the reasons stated, we affirm the decision of the Board.

Affirmed.

STEIGMANN and GARMAN, JJ., concur.