SEDOL TEACHERS UNION, LAKE COUNTY FEDERATION OF TEACHERS, LOCAL 504, IFT-AFT, AFL-CIO, Petitioner-Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (2nd Division)   No. 1—94—3384

Opinion filed July 23, 1996.

Haggerty, Loenig & Hill, Chartered, of Chicago (Mildred F. Haggerty, of counsel), for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, Daniel N. Malato, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

Law Offices of James C. Bakk, of Waukegan (James C. Bakk, of counsel), for respondent Barrington Community Unit School District No. 220.

Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield (Allen J. Oehlert, of counsel), for respondent Barrington Education Association.

JUSTICE BURKE delivered the opinion of the court:

Petitioner SEDOL Teachers Union, Lake County Federation of Teachers, Local 504, IFT-APT, AFL-CIO (SEDOL Union), appeals from an order of the Illinois Educational Labor Relations Board (IELRB) dismissing its complaint alleging an unfair labor practice claim against respondent Barrington Community Unit School District No. 220 (Barrington) and charging Barrington with refusing to follow a binding arbitration award, in violation of section 14(a)(8) of the Il-

linois Educational Labor Relations Act (Labor Act) (115 ILCS 5/14(a)(8) (West 1992)). On appeal, SEDOL Union argues that the IELRB erred in: (1) finding that the arbitration award in this matter was not binding; and (2) allowing respondent Barrington Education Association, IEA-NEA (Barrington Union), to intervene in the proceedings before the IELRB. For the reasons set forth below, we affirm.

The Special Education District of Lake County (SEDOL) is a cooperative special education district, consisting of 37 school districts, created pursuant to a joint agreement in 1973 under section 22.31 of the Illinois School Code (School Code). 105 ILCS 5/10—22.31 (West 1992). SEDOL provides special education services to handicapped students in its 37 member districts, each of which is located in Lake County, Illinois, and includes Barrington. SEDOL is an entity separate from its member districts and has its own governing board, which is comprised of one representative from each of its 37 member districts. SEDOL's powers, policies, and procedures are outlined in its "Articles of Joint Agreement." SEDOL hires its own teachers, who are represented by SEDOL Union, which is the exclusive representative of the bargaining unit consisting of SEDOL's certified teachers, speech therapists, prevocational counselors, social workers, educational diagnosticians, nurses and psychologists.

SEDOL, "with the approval of the SEDOL Governing Board," and "on its own behalf, and on behalf of its member boards," and SEDOL Union entered into a collective bargaining agreement and a supplement to the agreement (Supplement) for the period January 1, 1990, to August 15, 1992. The member districts, including Barrington, did not individually sign the agreement or the Supplement; 24 representatives of the member districts on SEDOL's governing board voted in favor of the agreement and Supplement, including Barrington's representative, allegedly without the authorization of Barrington; three voted against and 11 were absent. The Supplement provisions apply when a member district votes to "take back" a special education program from SEDOL. " 'Taking back' a program from SEDOL involve[s] a decision by a member district to offer certain special education classes which had been offered by SEDOL" and staffed by SEDOL employees; the member district would assume the fiscal and operational control over the program/classes previously administered by SEDOL. According to the Supplement, after a member district votes to "take back" a program, it must notify SEDOL of "any vacant and/or new positions created in a member district" resulting from the "take back." SEDOL is then required to advertise the vacant positions to tenured SEDOL employees.

In January 1992, Barrington voted to "take back" three programs from SEDOL. On January 13, Barrington notified SEDOL that it would be "taking back" these programs and that no vacant teaching positions would be created as a result of the "take backs." Based on Barrington's original notification, SEDOL did not post any vacancies resulting from Barrington's "take backs." However, Barrington subsequently posted three teaching vacancies, based on its belief that "[it] was entitled to post and fill the three positions internally, before reporting them to SEDOL as vacancies under the Supplement"[1] and, additionally, pursuant to a collective bargaining agreement between Barrington and Barrington Union to fill "nonpromotional" vacancies with qualified Barrington Union teachers.

On February 11, 1992, SEDOL Union filed a grievance with SEDOL pursuant to their collective bargaining agreement. SEDOL Union's grievance alleged that SEDOL violated the Supplement when it issued a list of vacant positions created by the "take backs" in member districts without including the vacant positions created by Barrington's "take backs." As a remedy, SEDOL Union demanded that Barrington immediately stop the hiring process.

On February 27, SEDOL filed a response to SEDOL Union's grievance, arguing that since Barrington did not notify SEDOL of any vacant teaching positions created by the "take backs," SEDOL had complied with the provisions of the Supplement by not listing any vacant Barrington teaching positions.

On May 2, 1992, Barrington filed a two-count complaint in the circuit court of Lake County seeking a declaratory judgment that it had complied with its contractual responsibilities to SEDOL in "taking back" the programs and seeking to stay the arbitration proceedings or enjoin the arbitrator from granting an award against Barrington. On May 13, the trial court dismissed both counts of Barrington's complaint for lack of subject matter jurisdiction.[2] The arbitration hearing also proceeded on May 13 on SEDOL Union's

---

[1]Barrington never conceded that it was bound by the Supplement and, in fact, the IELRB found that "none of the language of the Supplement created by SEDOL and the Federation [SEDOL Union] can require Barrington to follow the Supplement in hiring its own employees" and "[n]one of the language in the Supplement implies that SEDOL had actual [or apparent] authority to enter into the Supplement on behalf of Barrington."

[2]Barrington subsequently appealed only from the dismissal of the declaratory judgment count. On May 6, 1993, the Illinois Appellate Court for the Second Judicial District affirmed the trial court, not on the basis of lack of subject matter jurisdiction but, rather, on the basis that Barrington failed to allege a justiciable issue. *Barrington Community Unit School District No.*

grievance. Although SEDOL had requested that Barrington participate in a joint defense, Barrington did not do so and was not a party to the arbitration proceedings. During the arbitration hearing, SEDOL and SEDOL Union conceded that none of SEDOL's teachers "who had taught in Barrington classrooms were reduced in force because of the take-backs." SEDOL argued, however, that the arbitrator should render the arbitration award against Barrington, and not against SEDOL, because SEDOL was merely an agent for its principal, Barrington. SEDOL further argued that Barrington authorized the Supplement through its representative who was a member of SEDOL's governing board. SEDOL Union argued that Barrington was a party to the Supplement and that both SEDOL and the member districts, including Barrington, "were principals in the Supplement."

The arbitrator determined that he had jurisdiction over Barrington based on the fact that Barrington is a participating school district in SEDOL and Barrington had notice of the arbitration proceeding as indicated by its attempt to enjoin the proceeding. The arbitrator further stated:

> "Moreover, based on the language of the Supplement and the SEDOL Governing Board meeting of December 13, 1989, it would be difficult for Barrington to argue that they did not understand the Supplement or that they were not obligated to abide by the agreement."

The arbitrator accordingly concluded that under the provisions of the Supplement, Barrington was SEDOL's principal and SEDOL was Barrington's agent. Based on this relationship, the arbitrator further concluded that Barrington was liable for the acts of its agent, SEDOL. With respect to SEDOL's liability, the arbitrator concluded that SEDOL could not be held liable because Barrington failed to notify SEDOL of the vacant positions. The arbitrator issued his award on July 27, 1992, stating:

> "The grievance is sustained with respect to Barrington and denied with regard to SEDOL. Barrington is directed to post the three vacancies which were not filled according to the collective bargaining agreement's requirements and to provide an opportunity for SEDOL teachers to apply for the positions. Jurisdiction is retained with respect to the remedy."

Barrington refused to comply with the arbitration award because it maintained that the award was not binding against it. As a result, on August 17, 1992, SEDOL Union filed an unfair labor practice charge against Barrington with the IELRB. On December 3, 1992,

---

*220 v. Special Education District*, 245 Ill. App. 3d 242, 615 N.E.2d 1153 (1993).

the IELRB issued a complaint against Barrington. The complaint charged Barrington with engaging in unfair labor practices in violation of sections 14(a)(8) and 14(a)(1) of the Labor Act (115 ILCS 5/14(a)(8), (a)(1) (West 1992)), prohibiting educational employers from "[r]efusing to comply with the provisions of a binding arbitration award" and "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under [the Labor Act]." The complaint also notified Barrington that there would be a public hearing before an administrative law judge of the IELRB.

At the hearing before the administrative law judge, Barrington Union moved to intervene in the proceedings as an interested party. SEDOL Union objected, and the administrative law judge denied the motion. This motion was subsequently overturned by the IELRB following Barrington Union's interlocutory appeal from the denial of its motion, and Barrington Union was allowed to intervene as a party to the proceeding.

On December 22, 1993, the administrative law judge issued his recommended decision and order, concluding that Barrington was bound by the arbitration award and that enforcement of the award would not conflict with the Labor Act, the School Code or public policy. Barrington and Barrington Union filed exceptions to this order with the IELRB.

On September 26, 1994, the IELRB issued its opinion and order in this matter, overturning the administrative law judge's decision and finding that the award against Barrington was not binding. In its 32-page opinion and order, the IELRB found that SEDOL did not have authority under the School Code and SEDOL's "Articles of Joint Agreement" to bind Barrington under the Supplement. The IELRB also found that the award conflicted with the School Code and the Labor Act.[3] SEDOL Union appeals from the IELRB's decision, pursuant to section 16(a) of the Labor Act. 115 ILCS 5/16(a) (West 1992).

■ Judicial review of an administrative agency's actions extends to all questions of law and fact presented by the record. *Village of Downers Grove v. Illinois State Labor Relations Board*, 221 Ill. App.

---

[3]Because the IELRB reversed the arbitrator's decision on these grounds, it did not address "whether the arbitrator exceeded his authority under the contract, whether the award conflicted with public policy, whether the award conflicted with [the] rights of Barrington teachers under the School Code, or whether the arbitration proceedings were fair and impartial." Nor did it "address the appropriate remedy or the effect of any conflict with the contract between Barrington and the Association [Barrington Union], or with any related practice."

3d 47, 53, 581 N.E.2d 824, 828 (1991), *appeal denied*, 143 Ill. 2d 637, 587 N.E.2d 1013 (1992). The agency's findings and conclusions on questions of fact shall be considered *prima facie* true and correct. *Village of Downers Grove*, 221 Ill. App. 3d at 53. A reviewing court may reverse the agency's findings of fact only if they are against the manifest weight of the evidence and it is clearly evident that the agency should have reached an opposite conclusion. *Village of Downers Grove*, 221 Ill. App. 3d at 53. Where the question is one of law, the agency's finding is not binding on the court. *Village of Downers Grove*, 221 Ill. App. 3d at 53. A reviewing court will give substantial weight and deference to an interpretation of a statute by an agency charged with the administration and enforcement of that statute. *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 510, 599 N.E.2d 892, 898 (1992); *Village of Downers Grove*, 221 Ill. App. 3d at 53.

■ In the case at bar, SEDOL Union does not dispute the findings of fact. SEDOL Union first contends that the IELRB erred in its determination that the arbitration award was not binding against Barrington, arguing that the IELRB went beyond the standard used to determine whether arbitration awards are binding. That standard, as explained by the IELRB in *Chicago Board of Education*, 2 Pub. Employee Rep. (Ill.) 1089, No. 84—CA—0087—C, at VII—256 (IELRB June 24, 1986) (hereinafter 2 Pub. Employee Rep. (Ill.) par. 1089), *rev'd in part on other grounds*, 170 Ill. App. 3d 490, 524 N.E.2d 711 (1988), is:

"In determining whether there is a binding arbitration award, we will consider such factors as whether the award was rendered in accordance with the applicable grievance procedure, whether the procedures were fair and impartial, whether the award conflicts with other statutes, whether the award is patently repugnant to the purposes and policies of the Act, and any other basic challenge to the legitimacy of the award. Otherwise, we shall not redetermine the merits or redetermine the issues presented to the arbitrator." 2 Pub. Employee Rep. (Ill.) par. 1089.

Relying on *Chicago Board of Education*, SEDOL Union argues that the IELRB erroneously "redetermined the merits" of the case and "redetermined the issues presented to the arbitrator" when the IELRB determined that the award conflicted with other statutes, that the Supplement was not binding on Barrington, that the award conflicted with contract principles, and that the award was in conflict with the legal relationship between SEDOL and Barrington. SEDOL Union further argues that SEDOL, through its governing board, had specific statutory authority under section 10—22.31 of the School

Code to act in behalf of its member districts to provide special education services to the students of those districts. See 105 ILCS 5/10—22.31 (West 1992).

Barrington, Barrington Union and the IELRB argue that the IELRB's review and reversal of the arbitrator's award did not contravene the *Chicago Board of Education* standard in light of the fact that (1) the award was not rendered against Barrington in accordance with the grievance procedure that Barrington had with Barrington Union under their collective bargaining agreement; (2) the arbitration proceedings were not fair and impartial; (3) the award conflicted with the Labor Act and the School Code; and (4) the award was not legitimate because it ignored the rights of Barrington Union's members. They further argue that the IELRB properly found that section 10—22.31 does not provide SEDOL with an express grant of authority to bind member districts in hiring decisions. We agree.

■ In reaching its decision, the IELRB first considered the intergovernmental relationship between Barrington and SEDOL and determined that SEDOL had no authority, under section 10—22.31 of the School Code or under SEDOL's "Articles of Joint Agreement" to enter into the Supplement in behalf of Barrington which purports to bind Barrington. Section 10—22.31 provides:

> "Such [special education joint] agreement shall include, but not be limited to, provisions for administration, *staff*, [and] programs." (Emphasis added.) 105 ILCS 5/10—22.31 (West 1992).

In its opinion, the IELRB construed this statutory grant of authority as "extend[ing] [only to SEDOL's] employees." The IELRB relied on case law holding that " 'school boards' have only the powers which the General Assembly has expressly granted them and the powers which are necessary to implement the granted powers. *Powell v. Board of Education*, 189 Ill. App. 3d 802, 545 N.E.2d 767 (3rd Dist. 1989); *Evans v. Benjamin School District No. 25*, 134 Ill. App. 3d 875, 480 N.E.2d 1380 (2nd Dist. 1985), *appeal denied*." Therefore, according to the IELRB opinion and order, because the School Code is devoid of an express grant of authority to SEDOL, and because determining "how Barrington teaching positions are filled is not necessary for SEDOL to exercise any of its statutory powers," SEDOL acted without statutory authority when it attempted to bind Barrington to the Supplement.

As previously stated, a reviewing court will give substantial weight and deference to an interpretation of an ambiguous statute by an agency charged with the administration and enforcement of that statute. *Central City Education Ass'n*, 149 Ill. 2d at 510. Here, the IELRB employed its expertise in the areas of school law and labor

law when it construed this statute to conclude that SEDOL did not have authority to enter into the Supplement in behalf of its member districts which purports to bind Barrington. We find no reason to disturb the IELRB's interpretation of this statute.

SEDOL Union also argues that the "super-tenure" provisions of the School Code grant SEDOL the statutory authority to enter into the Supplement in behalf of its member districts. Barrington, Barrington Union and the IELRB argue that the "super-tenure" provisions do not give SEDOL authority to determine the manner in which Barrington shall fill its positions under the facts of this case because no SEDOL teacher lost a job as a result of Barrington's "take backs."

The "super-tenure" provisions of the School Code give bumping rights to tenured special education joint agreement teachers who were employed before September 23, 1987. 105 ILCS 5/24—11 (West 1992). Only when there has been a loss of jobs in the special education joint agreement are these teachers entitled to "bump" into the member district. *Costello v. Governing Board of Lee County Special Education Ass'n*, 252 Ill. App. 3d 547, 623 N.E.2d 966 (1993), *appeal denied*, 155 Ill. 2d 563, 633 N.E.2d 3 (1994) (holding that termination of a program within the context of section 24—11 means that the number of teachers must be reduced by the special education agreement). However, in the case at bar, since no SEDOL teacher lost a job as a result of Barrington's "take backs," the "super-tenure" provisions of the School Code do not apply. Therefore, SEDOL Union's reliance on this section of the School Code is misplaced.

SEDOL Union further argues that SEDOL had actual authority to act in behalf of its member districts based on SEDOL's "Articles of Joint Agreement" (Articles). SEDOL Union cites to only one provision in the Articles which it contends grants the SEDOL governing board "authority over teacher staffing of special education programs in SEDOL and in its member districts." That provision states:

> "SEDOL teachers assigned by the SEDOL Administration to a Member District are to be considered as faculty members of the Member District to the building principal where their classrooms are located. There shall be shared supervisory responsibilities between the administrators of the Member Districts and SEDOL."

Beyond referring to this provision, SEDOL Union makes no argument, nor gives any explanation as to how this provision grants SEDOL actual authority to bind Barrington to the Supplement. Barrington, Barrington Union and the IELRB argue that the Articles do not expressly grant SEDOL authority to bind Barrington.

We find, as did the IELRB, that SEDOL's Articles do not authorize SEDOL to determine how Barrington teaching positions shall be

filled. After reviewing the Articles, the IELRB stated that "[n]othing in the Articles of Joint Agreement suggests that SEDOL has this authority" to "determine how Barrington positions shall be filled." We have similarly reviewed the Articles and agree with the IELRB, especially in light of the fact that the section outlining the obligations of the member districts is devoid of any statement, and not surprisingly, that the member districts are bound by contracts entered into by the SEDOL board presumably for the benefit of a particular employees union over the member districts and any employees' unions with which the member districts have contracts.

Moreover, the Articles contain a provision for amendments to the Articles by majority vote of the governing board, thus indicating the intent of the Articles' drafters to limit the powers of SEDOL's governing board and the obligations of the member districts to those powers and obligations expressly provided in the Articles and any amendments thereto. Additionally, we note that no amendment to the Articles, which is the only agreement entered into by the member districts with SEDOL, was made pursuant to this amendment provision to bind the member districts to the "take back" provision of the Supplement to the separate agreement entered into by SEDOL and SEDOL Union. Accordingly, we find that the IELRB did not err when it concluded that the Articles did not grant express authority to SEDOL's governing board to enter into the Supplement which purports to bind Barrington.

SEDOL Union also argues that SEDOL had apparent authority to enter into the Supplement because the district members' representatives on SEDOL's governing board voted to accept the Supplement. As the IELRB stated in its opinion and order, "members of a school board do not have authority to enter into contracts on behalf of the school board outside of a properly called meeting of that board." *Lippincott v. Board of Education of Community Unit School District No. 5*, 342 Ill. App. 642, 97 N.E.2d 566 (1951); *Bituminous Casualty Corp. v. Folkerts*, 305 Ill. App. 443, 27 N.E.2d 670 (1940). Here, the IELRB concluded that Barrington had not acted or spoken in any way that would create a reasonable impression that Barrington authorized SEDOL to enter into an agreement governing the manner in which Barrington teaching positions would be filled. The IELRB further stated that "the fact that Barrington's representative to SEDOL's Governing Board, who was also a member of Barrington's Board of Education, voted for the supplement *** does not mean that Barrington voted for this Supplement," but rather that it was more reasonable to conclude that Barrington's representative was expressing her individual position as a member of SEDOL's governing board. We agree.

We further note that SEDOL Union's attempt to distinguish *Lippincott* and *Bituminous Casualty*, by arguing that SEDOL's governing board had actual authority to bind the member districts, fails because, as discussed above, neither the School Code nor SEDOL's Articles grant this authority. Furthermore, as Barrington points out, Barrington's school board never voted either to accept or reject the Supplement. Accordingly, SEDOL did not have either actual or apparent authority to act in behalf of Barrington when it entered into the Supplement.

We next address SEDOL Union's argument that the IELRB erred in concluding that the arbitration award conflicted with Illinois law. Barrington, Barrington Union and the IELRB argue that the IELRB properly determined that the arbitration award conflicted with specific provisions of the School Code and the Labor Act.

■ The IELRB relied on section 10(b) of the Labor Act (115 ILCS 5/10(b) (West 1992)) as authority for the proposition that an arbitration award that is in conflict with Illinois law is invalid and not binding. Section 10(b) provides, in relevant part:

> "Any provision in a collective bargaining agreement which has the effect of negating, abrogating, replacing, reducing, diminishing or limiting in any way any employee rights, guarantees or privileges provided in an Illinois statute or statutes shall be void and unenforceable." 115 ILCS 5/10(b) (West 1992).

In reaching its decision, the IELRB relied on *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 258 Ill. App. 3d 859, 870, 629 N.E.2d 797, 805 (1994), *affirmed*, 165 Ill. 2d 80, 649 N.E.2d 369 (1995), and *Faculty Ass'n of District 205 v. Illinois Educational Labor Relations Board*, 175 Ill. App. 3d 880, 890, 530 N.E.2d 548, 555 (1988). In *Rockford*, this court held that under section 10(b) of the Labor Act the arbitration award at issue was not a valid and binding award because it was contrary to a specific section of the School Code that allows a school board to determine whether cause for dismissal exists, whether such charges are remediable, and whether such charges are warranted. *Rockford*, 258 Ill. App. 3d at 872-73. In *Faculty Ass'n*, this court affirmed a decision by the IELRB which concluded that an arbitrator's determination that an uncertificated nurse was tenured violated a specific section of the School Code which required the dismissal of uncertificated, untenured employees before the dismissal of tenured employees. *Faculty Ass'n*, 175 Ill. App. 3d at 890-91.

The IELRB further found:

> "Under sections 10—20.7, 10—21, and 24—1 of the School Code, school boards such as Barrington's board of education have the

duty to hire teachers and determine their qualifications. Under these statutory provisions, only the school board which will employ the teachers has the power to hire those teachers or determine their qualifications. It is contrary to these provisions for SEDOL and the Federation [SEDOL Union] to decide how Barrington shall fill its own teaching positions.

Nevertheless, by agreeing to the Supplement, SEDOL and the Federation [SEDOL Union] have determined the procedure for filling Barrington positions and the group of applicants eligible for those positions. At the time that the teachers hired to fill the three positions at issue in this case began working in those positions, Barrington had taken back those positions. By its nature, the Supplement does not affect the assignment of special education positions when those positions are still SEDOL positions. Therefore the arbitrator's award determining that Barrington was required to comply with the Supplement in a case in which no tenured SEDOL teachers were reduced in force conflicted with Barrington's duty under the School Code to hire and determine the qualifications of its teachers."

■ We agree with the IELRB's conclusion that the arbitrator's award conflicted with the School Code. Under the School Code, the school board has the duty (105 ILCS 5/10—20 (West 1992)) "to appoint teachers and fix their salaries" (105 ILCS 5/10—20.7 (West 1992)), and "to examine teachers and to employ teachers" (105 ILCS 5/10—21.1 (West 1992)). See also 105 ILCS 5/24—1 (West 1992) ("School boards shall appoint all teachers [and] determine qualifications of employment"). It would be contrary to these provisions of the School Code to allow SEDOL to determine which teachers would work in Barrington's schools. As the IELRB found, the provisions of the Supplement essentially improperly "determined the procedure for filling Barrington positions and the group of applicants eligible for those positions." We also briefly reiterate that the "super-tenure" provisions of section 24—11 of the School Code (105 ILCS 5/24—11 (West 1992)) are inapplicable because no SEDOL teacher lost a position as a result of Barrington's "take-backs."

■ We also reject SEDOL Union's contention that the IELRB erred in finding that the arbitration award conflicts with section 10(a) of the Labor Act (115 ILCS 5/10(a) (West 1992)) concerning an employer's duty to bargain with the representative of its employees. SEDOL Union argues that the IELRB failed to show how Barrington's duty to bargain was negatively impacted by the award and that no issue of Barrington's duty to bargain was properly before the IELRB.

Barrington, Barrington Union and the IELRB contend that enforcement of the arbitration award would infringe on Barrington's

ability to bargain with Barrington Union regarding teachers' transfers to other positions in Barrington. The IELRB further contends that it properly considered Barrington's duty to bargain because, in adjudicating the unfair labor practice charge against Barrington, it was required to examine the arbitration award and decide whether it conflicted with any Illinois law. Accordingly, the IELRB argues that it "was authorized to determine whether the arbitration award was in conflict with Barrington's duty to bargain under the Act."

Section 10(a) provides that an educational employer and the exclusive representative representing its employees "have the authority and the duty to bargain collectively." 115 ILCS 5/10(a) (West 1992). Here, the IELRB concluded:

"The arbitrator's award also conflicted with Barrington's duty to bargain with the Association [Barrington Union] under the Illinois Educational Labor Relations Act [(Labor Act)]. *** Under section 10(a), Barrington has the authority to bargain with the Association [Barrington Union] concerning Barrington's certificated employees.

The Supplement infringes on this authority by not permitting Barrington to bargain effectively with the Association [Barrington Union] about employee transfers to other positions at Barrington ***.

We conclude, based on our experience in educational labor relations, that the issue of transfers to an employer's other positions is commonly bargained.

***

In this case, there was a practice at Barrington of posting positions and interviewing Barrington teachers. In the case of promotional positions, this practice was embodied in the contract between Barrington and the Association [Barrington Union]. To this extent, Barrington and the Association [Barrington Union] have already bargained about transfers for Barrington teachers to other positions at Barrington. To impose the requirements of the Supplement on Barrington would limit Barrington's ability to bargain with the Association [Barrington Union] on this issue.

At the applicable time, when the employees newly assigned to the positions began working in the positions, Barrington had taken back the positions. The positions then were Barrington, rather than SEDOL, positions. To infringe on Barrington's authority to bargain with the representative of its own employees about transfers to its own positions is contrary to Section 10(a) of our [Labor Act].

By requiring Barrington to comply with the Supplement under

the facts of this case, the arbitrator's award conflicted with Section 10(a) of the [Labor Act] and with Sections 10—20.7, 10—21.1 and 24—1 of the School Code. Therefore, the award is not binding under Section 10(b) of the [Labor Act]."

We agree with the IELRB's conclusion. Pursuant to section 10(a) of the Labor Act, "[a]n educational employer and the exclusive representative have the authority and the duty to bargain collectively as set forth in this Section. Collective bargaining is the performance of the mutual obligations of the educational employer and the representative of the educational employees to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, and to execute a written contract incorporating any agreement reached by such obligation, provided such obligation does not compel either party to agree to a proposal or require the making of a concession." 115 ILCS 5/10(a) (West 1992). In the present case, the provisions of the Supplement purport to govern which teachers Barrington must hire in the event of a "take back." If these provisions were given effect, the duty of Barrington and Barrington Union "to bargain with the representative of its own employees about transfers to its own positions" would be infringed.

For the reasons stated, the order of the IELRB is affirmed. Because of our affirmance, we need not address the issue of whether the IELRB erred in allowing Barrington Union to intervene.

Affirmed.

HARTMAN, P.J., and DiVITO, J., concur.