SECOND DIVISION

November 16, 1999

No. 1-98-3504

CHICAGO SCHOOL REFORM BOARD OF ) 

TRUSTEES, ) 

) Petition for Review of

Petitioner-Appellant, ) an Order of the 

) Illinois Educational

v. ) Labor Relations Board

)

ILLINOIS EDUCATIONAL LABOR RELATIONS ) No. 97-CA-0059-C

BOARD, and CHICAGO TEACHERS UNION ) 

LOCAL 1, AMERICAN FEDERATION OF )

TEACHERS, AFL-CIO, ) 

)

Respondents-Appellees. )

 

JUSTICE McNULTY delivered the opinion of the court:

Petitioner Chicago School Reform Board of Trustees (School Board) appeals an order of the Illinois Educational Labor Relations Board (IELRB) affirming the holding of an administrative law judge (ALJ) that the School Board had violated section 14(a) of the Illinois Educational Labor Relations Act (Labor Relations Act) (115 ILCS 5/14(a)(1), (a)(8) (West 1996)) by failing to comply with an  arbitration award.  On appeal, the School Board argues that the IELRB erred in finding that the arbitration award ordering reinstatement of a full-time basis (FTB) substitute teacher was binding on the School Board.   For the reasons set forth below, we reverse.

James Brown was a special education FTB substitute teacher at Oglesby Elementary School (Oglesby) from November 1994 to September 6, 1995, when the School Board dismissed him.  As a FTB substitute teacher, Brown was a full-time temporary employee who was not eligible for tenure.    

On June 16, 1995, Mr. Creg Williams, the principal of Oglesby, gave Brown a teacher evaluation review on a form for a regularly appointed teacher.  Although the evaluation cataloged many weaknesses in Brown's teaching performance, such as excessive tardiness, lack of classroom management, lack of variation in methodology, inadequate use of instructional time, failure to maintain accurate/appropriate records, and failure to provide a classroom environment conducive to teaching and learning, Williams gave Brown a satisfactory rating.   After Williams consulted the personnel department, however, he completed another review of Brown on a FTB substitute temporary teacher efficiency report form and, unlike the first review, gave Brown an overall rating of unsatisfactory.  Brown received this second review on June 22, 1995.  

On August 4, 1995, Jacqueline A. Baker, director of labor relations for the Chicago public schools, held a conference for Brown, pursuant to  article 39-4.2, section C, of the agreement between the School Board and the Chicago Teachers Union Local 1, American Federation of Teachers, AFL-CIO (Union), which required the director of personnel of the Chicago public schools to schedule a conference with any FTB substitute teacher who had been given an unsatisfactory rating in an evaluation.  The School Board discharged Brown a month after the conference.      

The Union filed a grievance on Brown's behalf on September 21, 1995.  In the grievance, the Union maintained that article 39-4.2 of the collective bargaining agreement required Williams to (1) issue Brown a notice of unsatisfactory service, (2) observe Brown's classroom, (3) confer with Brown to offer assistance in improving Brown's service, and (4) give Brown a written memorandum to sign in order to verify that Williams had visited Brown's classroom and had held a conference with him.  The Union requested that the School Board rescind the unsatisfactory rating it issued to Brown and remove all references thereto from Brown's file.  The Union also requested that the School Board reinstate Brown to his special education position at Oglesby and compensate him for any salary or benefits he lost due to the discharge.  Lastly, the Union asked that the School Board hold a conference and render a written decision within three school days as required by the collective bargaining agreement.  On October 23, 1995, Williams denied the Union's request that he remove the unsatisfactory rating from Brown's files and reinstate Brown to his position at Oglesby.  

On December 22, 1995, another conference was held with Brown, Union representatives, and school representatives to review the decision to terminate Brown's employment.  On January 12, 1996,  Paul Vallas, chief executive officer of the Chicago public schools, denied the grievance.  

The Union filed a demand for arbitration alleging the School Board had failed to comply with articles 3 and 39-4.2 of the collective bargaining agreement in terminating Brown's services.  Following a hearing, the arbitrator found that the School Board had failed to comply with article 39-4.2 of the agreement, including the mandate that the department of personnel schedule a conference with the FTB substitute teacher after an unsatisfactory review.  The arbitrator determined that the conference held on August 4, 1995, did not satisfy the requirements because it was conducted by the bureau of labor and employee Relations.  Accordingly, the arbitrator directed the School Board to place Brown in the FTB substitute teacher pool and to consider him for transfer to another teaching position.  The arbitrator also ordered the School Board to give Brown the back pay and benefits that he would have received had the School Board not dismissed him.  The School Board refused to comply with the arbitrator's decision.

On April 16, 1997, the Union filed an unfair-labor-practice charge with the IELRB, alleging that the School Board violated section 14(a) of the Labor Relations Act by failing to comply with the arbitration award.  Pursuant to section 15 of the Labor Relations Act (115 ILCS 5/15 (West 1996)), the IELRB issued a complaint against the School Board and assigned the case for hearing before an administrative law judge (ALJ).  On February 23, 1998, the ALJ found that the arbitration award was binding and that the School Board had violated section 14(a) of the Labor Relations Act.  The School Board filed exceptions to the ALJ's order before the IELRB.  On August 25, 1998, the IELRB affirmed the ALJ's decision and ordered the School Board to comply with the arbitrator's award.  The School Board then filed this petition for judicial review of the IELRB's order.  

Judicial review of an administrative agency's actions extends to all questions of law and fact presented by the record.  
SEDOL Teachers Union, Lake County Federation of Teachers, Local 504 v. Illinois Educational Labor Relations Board
, 282 Ill. App. 3d 804, 809, 668 N.E.2d 1117 (1996).  The agency's findings and conclusions on questions of fact are considered 
prima facie
 true and correct.  735 ILCS 5/3-110 (West 1994).  Accordingly, these findings and conclusions will not be disturbed unless they are contrary to the manifest weight of the evidence or an opposite conclusion is clearly evident.  
Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board
, 277 Ill. App. 3d 440, 444, 660 N.E.2d 151 (1995).  Where the question involved is one of law, such as the construction of a statute, the agency's finding is not binding on the courts.  
City of Freeport v. Illinois State Labor Relations Board
, 135 Ill. 2d 499, 507, 554 N.E.2d 155 (1990).  However, the courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute.  
Central City Education Ass'n v. Illinois Educational Labor Relations Board
, 149 Ill. 2d 496, 510, 599 N.E.2d 892 (1992). 
 

In the case at bar, the School Board does not dispute the IELRB's findings and conclusions on questions of fact.  The School Board also does not deny that the dismissal of a FTB substitute teacher is an arbitrable subject. Rather, the School Board maintains that it is not bound by an arbitration award ordering reinstatement of a FTB substitute teacher and that therefore the IELRB incorrectly found that the School Board violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Labor Relations Act.  

The inquiry into whether the School Board violated section 14(a)(8) has three components:  "[1] whether the award was binding; [2] the content of the award; and [3] whether the party has complied with the award."  
Board of Education of Community High School District No. 155 v. Illinois Educational Labor Relations Board
, 247 Ill. App. 3d 337, 344-45, 617 N.E.2d 269 (1993).  Here, the sole issue is whether the arbitration award binds the School Board.

The School Board argues that the arbitration award of reinstatement was not binding because it violated section 10(b) of the Labor Relations Act, which provides in part:

     "(b)  The parties to the collective bargaining process shall not effect or implement a provision in a collective 

bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois."  115 ILCS 5/10(b)(West 1996).  

Under section 10(b), it is a defense to an unfair-labor-practice charge that implementation of the provision in the collective bargaining agreement would be inconsistent with or in conflict with provisions of the School Code.  
Granite City Community Unit School District No. 9 v. Illinois Educational Labor Relations Board
, 279 Ill. App. 3d 439, 442, 664 N.E.2d 1060 (1996).
  As we stated in 
Midwest Central Education
, 277 Ill. App. 3d at 445, 660 N.E.2d 151, "[i]f compliance with an award would require a violation of statute, the award is nonbinding and subject to vacatur."  See also 
Faculty Ass'n of District 205 v. Illinois Educational Labor Relations Board
, 175 Ill. App. 3d 880, 890, 530 N.E.2d 548 (1988).

The School Board maintains that, pursuant to section 34-8.1 of the School Code (105 ILCS 5/34-8.1 (West 1996)), the School Board has the exclusive authority to terminate the services of a teacher.  The School Board also asserts that the arbitrator's decision that Brown be reinstated to the FTB substitute teacher pool conflicted with section 34-8.1 of the School Code. The question then becomes whether section 34-8.1 gives the School Board the exclusive power to discharge FTB substitute teachers and, if so, whether this power prohibits an arbitrator from reinstating such teachers.

The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature.  
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 Ill. 2d 76, 81, 630 N.E.2d 820 (1994).  A court will look first to the statutory language for the best indication of the legislature's intent.  
Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board
, 165 Ill. 2d 80, 87, 649 N.E.2d 369 (1995); 
Lemont-Bromberek Combined School District No. 113(a) v. Walter
, 279 Ill. App. 3d 847, 849, 665 N.E.2d 548 (1996).  Where the language of a statutory provision is clear and unambiguous, the plain and ordinary meaning of the words will be given effect without resorting to extrinsic aids for construction.  
Board of Education of Rockford School District
, 165 Ill. 2d at 87; 
Lewis-Connelly v. Board of Education of Deerfield Public Schools, District 109
, 277 Ill. App. 3d 554, 558, 660 N.E.2d 283 (1996).

     The sections of the School Code are 
in pari materia
 and must be construed with reference to one another in order to give harmonious meaning to the act as a whole.  
Maiter v. Chicago Board of Education
, 82 Ill. 2d 373, 389, 415 N.E.2d 1034 (1980); 
Lewis-

Connelly
, 277 Ill. App. 3d at 558. As we observed in 
Lemont-Bromberek
:

"Courts construe statutes to give effect to each section [citation], presuming that the legislature did not intend absurd, unjust or unreasonable consequences. [Citation.]  But the court 'must construe the statute as it is and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute. [Citation.]
'"   
Lemont-Bromberek
, 279 Ill. App. 3d at 850.

See also 
Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.
, 118 Ill. 2d 389, 402, 515 N.E.2d 1222 (1987). 

Section 34-8.1 of the School Code provides in part: 

"Principals.  Principals shall be employed to supervise the operation of each attendance center.  Their powers and duties shall include but not be limited to the authority (i) to direct, supervise, evaluate, and suspend with or without pay or otherwise discipline all teachers, assistant principals, and other employees assigned to the attendance center in accordance with board rules and policies and (ii) to direct all other persons assigned to the attendance center pursuant to a contract with a third party to provide services to the school system.  The right to employ, discharge, and layoff shall be vested solely with the board.  The principal shall fill positions by appointment as provided in this Section and may make recommendations to the board regarding the employment, discharge, or layoff of any individual."  105 ILCS 5/34-8.1 (West 1996).

Section 34-8.1 assigns certain duties and responsibilities to the principals and the School Board.  The principals supervise the operation of the attendance centers and may evaluate, suspend, or otherwise discipline all teachers, assistant principals and other employees assigned to the attendance centers. In addition, the principals may make recommendations to the School Board regarding the discharge of any individual.  However, the section assigns the authority to employ, discharge and lay off employees to the School Board.   

The School Board claims that, pursuant to the section, the School Board has the exclusive authority to discharge all categories of teachers and that, since this authority is exclusive, an arbitrator cannot order the reinstatement of a FTB substitute teacher.  In contrast, the Union and the IELRB maintain that the section compels a narrower reading -- that it simply allocates power between principals and the School Board.  The Union and the IELRB argue that, if the legislature had intended to grant the School Board the exclusive authority to discharge all teachers, the legislature would not have buried the grant within the middle of a provision entitled "Principals."  As both of these interpretations are plausible when reading the plain language of the statute, we conclude that the statute is ambiguous; thus, we will use extrinsic aids to assist us to determine the true intent of the legislature.

While it is true that the official title of a statute can provide a court guidance in interpreting the statute's meaning (
Hansen v. Caring Professionals, Inc.
, 286 Ill. App. 3d 797, 805, 676 N.E.2d 1349 (1997)), the title certainly is not the court's only tool.  A statutory amendment is also an appropriate source for determining legislative intent.  
Scott v. Archer-Daniels-Midland Co.
, 194 Ill. App. 3d 510, 515, 551 N.E.2d 776 (1990).  A material change to a statute creates a rebuttable assumption that the legislature intended to change the existing law.  
State v. Mikusch
, 138 Ill. 2d 242, 252, 562 N.E.2d 168 (1990).   

Public Act 89-15, effective May 30, 1995, changed section 34-

8.1 considerably.  Pub. Act 89-15, § 5, eff. May 30, 1995.  Prior to these revisions, the section did not specifically reference the School Board's power to discharge teachers.  Instead, the section delineated certain powers of the School Board over operating engineers and food service managers.  The section stated in pertinent part:

     "The right to employ, discipline, discharge and layoff for cause shall be vested solely with the Board of Education, but the 
Operating Engineers Union
 shall have the right in case of discharge, discipline, or layoff to avail themselves of existing civil service laws and contractual agreements with the Board of Education. 

* * *  

     The right to employ, discipline, discharge and layoff for cause shall be vested solely with the Board of Education, but the 
Food Service Union
 shall have the right in case of discharge, discipline, or layoff to avail themselves of existing civil service laws and contractual agreements with the Board of Education." (Emphasis added.) 105 ILCS 5/34-8.1 (West 1994).

Thus, as the language of the provisions indicate, prior to May 30, 1995, section 34-8.1 granted the School Board the exclusive power to discharge specific types of employees, but this power was limited by civil service laws and collective bargaining agreements.

Public Act 89-15 deleted these provisions from section 34-8.1 and added the general provision which provides:  "The right to employ, discharge, and layoff shall be vested solely with the board."  Pub. Act 89-15, § 5, eff. May 30, 1995.  Notably, the restructured statute retains the exact language for the grant of power to the School Board from the 1994 version but excludes the qualifier which, in the previous version, referred to the operating engineers and food service managers and divested a portion of the School Board's rights regarding these employees to the unions.  This revised general grant of power is placed directly after the section outlines the powers of principals concerning all teachers, assistant principals and other employees.   

We find that the revisions made in Public Act 89-15 indicate that the legislature intended to grant the School Board the absolute power to discharge all employees -- including FTB substitute teachers -- through the sentence "The right to employ, discharge, and layoff shall be vested solely with the board."  Pub. Act 89-15, § 5, eff. May 30, 1995.  The prior version of section 34-8.1 demonstrates that the legislature is explicit when limiting the powers of the School Board.  Accordingly, if the legislature did not intend the School Board's power to discharge to be exclusive, the legislature would have expressly qualified the grant by divesting some of the School Board's authority as the legislature did prior to Public Act 89-15.    

Our interpretation of legislative intent is buttressed by the remarks of the legislators made during the debates.  The court may use legislative debates to determine the legislative intent underlying specific legislation.  
Hyatt Corp. v. Sweet
, 230 Ill. App. 3d 423, 430, 594 N.E.2d 1243 (1992), citing
 
Finish Line Express, Inc. v. City of Chicago
, 72 Ill. 2d 131, 379 N.E.2d 290 (1978).  According to the debates, the purpose of House Bill 206, which amended section 34-8.1, was to treat some of the problems of the Chicago public schools.  One way the bill addressed these problems was by extending more latitude and control to the school administration, including the principals and the School Board, over the schools and all their employees.  As a direct consequence, the unions, and ultimately the employees, lost some bargaining power.  This result prompted many criticisms of the bill within the House of Representatives and the Senate.  

In 1995, Senator Watson, one of the co-sponsors of House Bill 206, stated:

"We are abolishing the current fifteen-member Chicago Board of Education and creating a five-member Reform Board of Trustees to assume control of the school system for the next four years. *** 
We give considerable power and authority to the board.
  It directs them to improve the quality of educational services, reduce the cost of noneducational services, develop a long-term financial plan, streamline and strengthen the management, direct accountability efforts, enact policies that ensure the system will operate in an efficient and ethical manner ***." (Emphasis added.)  89th Ill. Gen. Assem., Senate Proceedings, May 23, 1995, at 163 (statements of Senator Watson).

Then, co-sponsor Senator O'Malley added:

"[It] gives principals the authority to direct, supervise, evaluate, hire and discipline all employees of the school ***  Principals are given exclusive authority to evaluate engineers and food service managers and those employees are not allowed to appeal unsatisfactory evaluations.  T
he teacher dismissal process is streamlined
."  (Emphasis added.)  89th Ill. Gen. Assem., Senate Proceedings, May 23, 1995, at 164 (statements of Senator O'Malley).

Further, in the House debates, Representative Cowlishaw explained the reasoning behind the amendments to section 34-8.1 which eliminated references to food service managers and operating engineers: 

"It does eliminate some of the language having to do with civil servants and instead provides that the board may appoint or provide for the appointment of such other officers and employees as it deems necessary.  This was simply one more step in our attempt to give this board the total amount of flexibility that we possibly could so that the decision making could actually make a difference in the schools."  89th
 Ill. Gen. Assem., House of Representatives Proceedings, May 24, 1995, at 99-100 (statements of Representative Cowlishaw).

These comments, as well as the overall sentiment of the debates, confirm that the legislative intent Public Act 89-15 was to grant the School Board more power in dealing with its schools and its employees.  Therefore, following legislative intent, we hold that section 34-8.1 of the School Code grants the School Board the exclusive power to dismiss all teachers.  Since the School Board in this case had the absolute authority to terminate Brown's employment, the arbitrator's award of reinstatement conflicts with section 34-8.1.  Accordingly, the reinstatement award is not binding on the School Board because the award violates section 10(b) of the Labor Relations Act.

Our finding accords with the supreme court's holding in 
Board of Education of Rockford School District
, 165 Ill. 2d 80, 649 N.E.2d 369.  In 
Board of Education of Rockford School District
, the school board suspended Wehrle, a tenured teacher, after a physical altercation with his students.  Following a due process hearing, the school board issued Wehrle a formal "notice to remedy" pursuant to section 24-12 of the School Code.  Wehrle successfully completed his remediation period but filed a grievance alleging that the school board violated a "just cause" provision of the collective-

bargaining agreement in issuing the "notice to remedy."  The "just cause" provision required that the school board not act against a teacher without just cause.  Wehrle sought an order that the school board cancel the "notice to remedy" and remove all printed materials relating thereto from his personnel files.   The board declined to rescind the "notice to remedy."  Wehrle demanded arbitration of the grievance and won an award directing that the district rescind the "notice to remedy" and remove all printed material relating to the incident from Wehrle's personnel records.  The Rockford Education Association then filed an unfair-labor charge against IELRB, alleging that the school board had violated sections 14(a)(1) and 14(a)(8) of the Labor Relations Act by refusing to comply with the arbitration award.  The administrative law judge ruled that the school board had not violated sections 14(a)(1) and 14(a)(8) of the Act because the grievance was "inarbitrable" under section 10(b) of the Labor Relations Act.  The IELRB reversed, holding that the arbitrator's award did not conflict with section 10(b) of the Labor Relations Act.  The appellate court reversed the IELRB's decision because the court found that the implementation of the "just cause" provision conflicted with sections 10-22.4 and 24-12 of the School Code.   On appeal, the supreme court affirmed the appellate court's decision and held that the arbitration award was invalid because, pursuant to sections 10-22.4 and 24-12, the school board has the exclusive authority to determine the appropriateness of the issuance of a "notice to remedy."  The court concluded that the procedural requirements for dismissal under these sections incorporate the school board's right to make this determination.   Accordingly, the court found that the implementation of the "just cause" provision interfered with this statutory right and ultimately violated section 10(b) of the Labor Relations Act.  The court stated:

     "Sections 10-22.4 and 24-12 provide mandatory procedural requirements for a school board's dismissal of a tenured teacher.  Section 10-22.4 grants a school board the authority to dismiss a teacher.  Section 24-12 prescribes the procedure for the dismissal of a tenured teacher pursuant to section 10-

22.4.  Specifically, section 24-12 requires a school board to provide a tenured teacher with a written warning when the teacher's conduct is found to be remediable.  [Citation.]  A 'notice to remedy' represents such a warning.  It notifies a teacher that, unless his or her conduct is corrected, he or she may face charges subject to dismissal.  From the above it is evident that the procedural requirements for dismissal incorporate the school board's duty to make the initial determination of whether a teacher's conduct is remediable.  In essence, a corollary to the school board's power to dismiss is its corresponding duty to issue a 'notice to remedy' under the appropriate circumstances. * * *

*  *  *

     We find that the implementation of the 'just cause' provision in arbitration is inconsistent and conflicts with the mandates established pursuant to section 24-12 of the School Code.  As noted, section 24-12 recognizes the school board's dismissal authority under section 10-22.4 and prescribes the process for dismissal.  We agree with the appellate court that to allow an arbitrator to decide whether a school board acted with just cause in issuing a 'notice to remedy' against a tenured teacher is inconsistent and conflicts with the School Code, which grants the power of dismissal to the school board."  
Board of Education of Rockford School District
, 165 Ill. 2d at 91-92.

Under the supreme court's holding in 
Board of Education of Rockford School District
, an arbitration award that conflicts with any Illinois statute violates section 10(b).  In the case at bar, section 34-8.1 states that "[t]he right to employ, discharge, and layoff shall be vested solely with the board."  105 ILCS 5/34-8.1 (West 1996).  Allowing an arbitrator to reinstate a FTB substitute teacher to the FTB pool is inconsistent and conflicts with the School Board's exclusive authority to discharge the FTB substitute teacher.  See 
SEDOL Teachers Union
, 282 Ill. App. 3d 804, 668 N.E.2d 1117 (to allow the Special Education District of Lake County, a cooperative special education district consisting of 37 school districts, to determine which teachers would work in the schools of one of its member districts would be contrary to  provisions of the School Code that authorized the school board to employ and appoint teachers); 
Midwest Central Education
, 277 Ill. App. 3d 440, 660 N.E.2d 151 (by ordering a teacher reinstated in the face of the district's decision not to renew her, the arbitrator undermined authority specifically and exclusively reserved for the school board under sections 10-22.4 and 24-11 of the School Code); 
Faculty Ass'n of District 205
, 175 Ill. App. 3d at 880, 530 N.E.2d 548 (the school board was not required to comply with an arbitration award mandating reinstatement of a nontenured employee that conflicted with section 24-12 of the School Code, which authorizes the school board to terminate the services of a probationary employee).

The IELRB and the Union argue that, even if the court finds that section 34-8.1 grants the School Board the authority to discharge FTB substitute teachers, this authority is not exclusive.  The IELRB and the Union use 
Granite City
, 279 Ill. App. 3d 439, 664 N.E.2d 1060, to assert that the School Board can delegate its power to discharge to an arbitrator through the collective bargaining agreement.  In 
Granite City
, the court held that the arbitration of a teacher's temporary disciplinary suspension did not violate section 10(b) of the Labor Relations Act.  The court reasoned that the arbitrator's ruling did not conflict with any specific statutory provision and that a temporary suspension was not an integral part of any statutory process.  The court stated:

"Simply because a school board is possessed of a power does not imply that the board may never agree through a collective-

bargaining agreement to have an arbitrator supervise the board's exercise of that power.  The District is free, via a collective-bargaining agreement, to delegate any powers it has to an arbitrator, so long as the exercise of those powers by the arbitrator would not be 'in violation of, or inconsistent with, or in conflict with' a specific statutory provision or an integral part of any statutory scheme."  
Granite City
, 279 Ill. App. 3d at 446.

Granite City
 supports the proposition that the School Board may delegate a nonexclusive power, such as the power to suspend, to an arbitrator.  The case does not advance the position that the School Board may assign its absolute powers to an arbitrator.  Since we have found that section 34-8.1 provides the School Board with the absolute authority to discharge all teachers, the power cannot be delegated to an arbitrator.  See 
Midwest Central Education
, 277 Ill. App. 3d at 446 (the power to appoint and dismiss teachers is discretionary and cannot be delegated or limited by a collective binding agreement). 

For the aforementioned reasons, we reverse the decision of the IELRB mandating compliance by the School Board with the arbitrator's award of reinstatement and remand to the IELRB for further proceedings consistent with the views expressed in this opinion.

COUSINS, P.J., 
and GORDON, J., concur.